LOTTINGER, Judge.
This is a suit for divorce and child custody filed by J. Douglas Stephenson against his wife, Linda Carr Stephenson. The trial court rendered a divorce judgment in favor of the husband on grounds of adultery and granted custody of the 4-year-old child to the defendant mother. The plaintiff-husband appeals the custody award.
Douglas and Linda were married on November 10,1973, in Indiana. One daughter, Candice Ann, was born of the marriage. The couple moved to Louisiana in early March of 1974 and moved four or five times since then before finally settling in Prairie-ville.
In January, 1979, Mr. Stephenson moved to Thibodaux, Louisiana, but his wife re *50 mained in Prairieville. The record indicates that Mrs. Stephenson committed a number of acts of adultery while she and her husband were married, and that her husband committed at least one act of adultery at a “bump and grind” party held at their trailer home about five years prior to trial. After becoming separated in fact in early 1979, Mrs. Stephenson began dating another man and moved into his trailer with her daughter in June of 1979. Each spouse accused the other of generally refusing to have marital relations during the last two years of their marriage.
The preponderance of the testimony indicates that Mrs. Stephenson has taken good care of her young daughter and has supplied her basic needs of food, clothing and shelter. The record also shows that should Mr. Stephenson get custody of the child, he will move the child with him to Indiana where he, his parents and his former wife’s parents will share responsibilities for rearing the child.
In his reasons for judgment at the conclusion of the divorce and temporary custody proceeding, the trial judge said:
“There is no doubt about the wife’s adul-try [sic] which was freely admitted. It is also apparent that the Court cannot permit the custody to remain in the wife under the present circumstances. However, the Court feels that it would be to the best interest and welfare of the child if the custody could be continued in the mother.
“Therefore the Court will continue the temporary custody in the mother but will award the permanent custody to the father unless within the next six weeks she either establishes a domicile separate and apart from the man with whom she is presently living and conducts herself in a manner which is appropriate for the rearing of a small child or marries the man in question.”
Testimony at the subsequent hearing for permanent custody showed that Mrs. Stephenson’s paramour had moved out of the trailer but that they had seen each other on occasion and that they planned to marry on the day of the permanent custody hearing. The trial judge awarded permanent custody to the mother. In his written reasons for judgment, he recited her testimony of her intention to marry her boyfriend as soon as the boyfriend obtained his divorce. The trial judge checked the records in the clerk of court’s office some three days after the hearing to prove that the marriage had indeed taken place. The trial judge stated that he initially granted temporary custody to the mother because there was “no evidence that any impropriety was conducted in the sight or hearing of the child, simply that her mother and the man in question lived together under the same roof while the child was also present in the household.”
In appealing, the plaintiff argues strenuously that the trial court erred in finding that the best interest of the child would be served by granting custody to the wife.
Child custody cases are never easy. This is particularly true when, as in this case, the mother lives openly with a man not her husband while a child of tender years is present. The trial judges of this state have a grave responsibility to see to it that justice is done and that the best interests of the child are preserved. Because the trial judge must view the witnesses, listen to their testimony, detecting sincerity or insincerity, and perhaps even speak with the child or children involved, a great deal of discretion is accorded him, and the appellate courts give great weight to his decision. However, the great weight given trial court decisions in child custody matters does not mandate an abrogation of the constitutional review imposed upon the appellate courts.
The appellant-husband cites Schexnayder v. Schexnayder, 371 So.2d 769 (La.1979), in addition to several other cases. In Schex-nayder the Supreme Court reversed the court of appeal and the trial judge, both of whom had awarded custody to the mother. In that case the mother had had an affair for some time outside of her home with a man of a different race. During her affair the care rendered to her children suffered. In reversing the lower courts and awarding custody to the father, the Supreme Court said:
*51 “However, when the mother has consistently engaged in a course of open and public adultery in defiance of generally accepted moral principles and in disregard of the embarrassment and injuries which might be sustained by the children, then the court is justified in depriving her of the care of the children, and in awarding custody to the father or to some other party lawfully entitled to it. [Citations omitted.]
“The purpose for the above jurispruden-tially established rule is not to punish the mother but to protect the children. We recognize that in many cases infrequent indiscretions may be borne out of human frailty rather than an absence of moral character. In such cases, the adulterous affair will not mitigate against a person’s claim for custody. However, in cases where a person consistently and over a period of time engages in a course of open and public adultery in defiance of generally accepted moral principles in total disregard of any embarrassment and injuries which might be sustained by the children of the marriage, past misconduct forms an important consideration in determining the present suitability of a parent. * * * We believe this because common . knowledge and experience teaches that a child learns by example, especially from its parents, * * * and that it is a parent’s duty to demonstrate to his or her children qualities of good moral character. Consequently, parents fail in that duty when they openly and notoriously display an utter disregard for moral and social values in the area of sexual fidelity towards each other and thus forfeit the moral leadership owed their children.”
We believe the activities of the mother in the instant case are more analogous to those of the mother in Schexnayder as compared to the activities of the mother in the recent Supreme Court case of Cleeton v. Cleeton, 383 So.2d 1231 (La.1979). The troublesome area presented in this case, however, is that the child herein was always properly cared for and that the husband failed to properly financially support the mother and child after separation in fact occurred.
The record is clear that if the father is granted custody of his child he is willing and able to provide a good home for the girl. His mother testified that she is willing and able to assist her son in providing a good home for the child when the father and child move to Indiana. Only one instance of infidelity was shown on the part of the husband-father and this occurred five years ago.
We are convinced that the trial judge clearly erred and abused his discretion in awarding the custody of this child to the mother. Though the mother adequately provided for the physical needs of the child, we are of the opinion that the father is able to do the same. Additionally, the father will present to the child a better moral atmosphere within which to be reared.
One of the primary reasons — if not the reason — the trial court awarded permanent custody to the mother was that the mother had married her boyfriend immediately following the permanent custody hearing. As indicated above, the trial court checked the records of the clerk of court’s office some three days after the custody hearing to confirm that the marriage had taken place. The trial court erred in going outside of the record to determine that the marriage had taken place. As matters stood at the time of the permanent custody hearing, the mother had not married her boyfriend but was planning to marry him when the boyfriend’s divorce became final that day. As the evidence stood before the trier of fact at the custody hearing, the mother was unmarried.
Even conceding, for the sake of argument, that the fact of the marriage should have been considered, we do not agree that the marriage alone proves that the mother has changed her moral conduct. As regards the best interest of the child, the fact that a parent has remarried within a short period of time before or after the permanent custody hearing has little, if any, bearing on whether the parent will *52 provide a suitable moral atmosphere for the upbringing of the child. A marriage, coupled with the passage of sufficient time to show that the mother has developed a wholesome home within which to rear a child, would be evidence to be considered in determining child custody. Mrs. Stephenson’s recourse is to seek a change of custody after sufficient time has transpired to show that she and her new husband are capable of providing a proper atmosphere for raising a small child.
Regardless of whether the trial judge considered the pending marriage, or went outside the record to consider an after the fact marriage, his strong reliance on same in awarding permanent custody to the mother was error.
Therefore, for the above and foregoing reasons, the judgment of the trial court is reversed and permanent care, custody and control of the child, Candice Ann Stephenson, is awarded to plaintiff-appellant, J. Douglas Stephenson. This matter is remanded to the trial court for the purpose of establishing fixed visitation privileges on behalf of Mrs. Stephenson. Defendant-ap-pellee is to pay all costs of this proceeding in the trial court and in this court.
REVERSED, RENDERED AND REMANDED.
EDWARDS, J., dissents and assigns reasons.
CHIASSON, J., dissents for reasons assigned by EDWARDS, J.