404 So.2d 963 (1981)
J. Douglas STEPHENSON
v.
Linda Carr STEPHENSON.
No. 81-C-1459.
Supreme Court of Louisiana.
September 28, 1981.
John A. Lieux, Gonzales, for defendant-applicant.
Ralph D. Hillman, Thibodaux, for plaintiff-respondent.
BLANCHE, Justice.
This is a dispute over child custody. On November 30, 1979 Douglas Stephenson was granted a divorce from Linda Stephenson on the ground of adultery. Temporary custody of the couple's minor daughter was awarded to Mrs. Stephenson. A separate hearing was held on January 15, 1980 and Mrs. Stephenson was awarded permanent custody. Douglas Stephenson appealed the custody award. The First Circuit Court of Appeal reversed the ruling of the trial court and granted permanent custody of the child to Mr. Stephenson. 398 So.2d 48. Linda Stephenson now challenges the judgment of the court of appeal.
Douglas and Linda Stephenson were married in Indiana on December 10, 1973. The couple moved to Louisiana in 1974 and eventually settled in Prairieville. One child, Candice Ann, was born of the marriage. Candice was 4 years old at the time trial of this matter was originally held.
In January of 1979 Douglas Stephenson moved to Thibodeaux, Louisiana, taking the family trailer home with him. Mrs. Stephenson remained in Prairieville with Candice Ann. Problems in the Stephenson marriage began to appear early in 1977. Mrs. Stephenson committed several acts of adultery while still living with her husband. Mr. Stephenson admitted at least one act of adultery committed at a "bump and grind *964 party" held at their home some years earlier. At trial, each spouse accused the other of having refused marital relations during the last two years of the marriage.
Some months after the couple had separated in fact in 1979, Mrs. Stephenson began dating Eddie Gunby. A short while later, she and Candice Ann moved into Mr. Gunby's trailer home. When he learned that his wife and child had been living with Mr. Gunby, Mr. Stephenson filed suit for an immediate divorce and sought permanent custody of his young daughter.
A judgment of divorce was granted after trial in which Mrs. Stephenson freely admitted her adultery with Mr. Gunby. Eddie Gunby, also married and in the process of obtaining a divorce at the time of trial, was called to testify. Both he and Linda Stephenson testified that they planned to marry as soon as both divorces became final. Other testimony at trial dealt with Linda Stephenson's fitness for custody of Candice Ann. All witnesses, including Douglas Stephenson, testified that Mrs. Stephenson had provided proper care for her daughter, assuming full financial responsibility for Candice from the time the couple separated in fact in January, 1979. For his part, Douglas Stephenson acknowledged that he had provided almost no support for his child during the time the couple were separated.
At the time of trial, Mrs. Stephenson was still residing with Eddie Gunby. In his reasons for judgment at the conclusion of the divorce temporary custody proceeding, the trial judge stated:
"There is no doubt about the wife's adultry [sic] which was freely admitted. It is also apparent that the Court cannot permit the custody to remain in the wife under the present circumstances. However, the Court feels that it would be to the best interest and welfare of the child if the custody could be continued in the mother.
"Therefore, the Court will continue the temporary custody in the mother but will award the permanent custody to the father unless within the next six weeks she either establishes a domicile separate and apart from the man with whom she is presently living and conduct herself in a manner which is appropriate for the rearing of a small child or marries the man in question."
A separate hearing was held on January 15, 1980 to determine the issue of permanent custody. At this hearing, Linda Stephenson testified that Mr. Gunby moved out of the trailer home the couple had been sharing shortly after the initial trial. She also testified that she and Eddie Gunby planned to marry that afternoon as Mr. Gunby's divorce was to become final that day. Blood tests taken by Mrs. Stephenson and Mr. Gunby in preparation for their marriage were introduced in evidence to corroborate her testimony. At the conclusion of the hearing, the trial court took the matter under advisement. Three days later, the trial court checked the courthouse records and ascertained that Linda Stephenson and Eddie Gunby had, in fact, married.
On February 28, the trial court signed judgment granting permanent custody of Candice to Linda Stephenson. In his written reasons for judgment, the trial judge specifically found that it would be in the best interest of the minor child that custody be given to her mother.
"[T]he Court has reached the conclusion that the welfare of the child will best be served by continuing custody in the mother. Although not morally perfect the evidence preponderates in favor of the conclusion that she has otherwise been a good mother to her young daughter. She is now married and can provide a suitable moral environment for the child. The child has always lived with her mother and a change of custody to the father would result in her being relocated in another state. The father's asserted moral superiority is marred by his own admitted misconduct on one occasion, and his professed concern for the welfare of his daughter weakened by his total failure to provide for her support during a period of time when he knew or should have known that his wife had inadequate resources of her own to properly care for the child."
*965 The court of appeal disagreed. Its reversal of the custody award was based on Schexnayder v. Schexnayder, 371 So.2d 769 (La. 1979), wherein this Court reversed an award of custody to the mother of three small children. As in the instant case, the trial judge had granted custody of the minor children to their mother in spite of her admission of adultery. The court of appeal upheld the ruling of the trial court. Noting that proof of adultery does not necessarily render morally unfit parent who is otherwise suited for custody, we nevertheless reversed the decisions of the lower courts and awarded permanent custody to the father, for this reason:
"However, when the mother has consistently engaged in a course of open and public adultery in defiance of generally accepted moral principles and in disregard to the embarrassment and injuries which might be sustained by the children, then the court is justified in depriving her of the care of the children, and in awarding custody to the father, or to some other person lawfully entitled to it." (citations omitted)
In Schexnayder, the mother had clearly engaged in open and public adultery, without regard for her children's well-being. However, comparison of the facts of Schexnayder to those of the instant case reveals significant differences between the two. While still living with her husband, Mrs. Schexnayder became sexually involved with a man of another race. She would meet her lover behind a school, a church, or other such building and proceed with him to a motel or other location and engage in sexual relations. On one occasion, Mrs. Schexnayder parked her car in the parking lot of a small town bar and walked to her lover's van, which was also in the lot. She then drove with him to the levee, where they had sexual relations inside the van. The couple were so indiscreet in the conduct of their affair that their relationship became common knowledge and the subject of much gossip in the small town in which the Schexnayders resided. At the trial for custody pendente lite, Mrs. Schexnayder admitted continuing the affair in spite of the detrimental effect she knew it would have on her marriage and her children.
By contrast, Mrs. Stephenson had been living separate and apart from her husband for some time before she became involved with Eddie Gunby. Her relationship with Mr. Gunby, even after she and Candice began living with him, engendered none of the notoriety which marked Mrs. Schexnayder's affair. In comparison to the flagrant sexual misbehavior of Mrs. Schexnayder and her lover, Mr. Gunby and Mrs. Stephenson seem to have conducted themselves with considerable discretion.
Perhaps most pertinent to the issue of child custody, testimony in the Schexnayder case indicated that Mrs. Schexnayder had neglected the basic needs of her children during her affair. The children were invariably sent to their grandparents' home when their mother wished to meet her lover. The grandmother testified that she took "pity" on them and would feed them, bathe them and put them to bed. The quality of the children's home environment was also doubtful in light of the grandmother's testimony that it took her and a maid eight days to clean the house after Mrs. Schexnayder had moved out.
In the instant case, the testimony is undisputed that Mrs. Stephenson has provided excellent care for her young daughter, supplying all her needs of food, clothing and shelter during the time since the couple separated in fact. Mr. Stephenson acknowledged that his wife had always properly cared for their child. He must have felt that Candice was receiving adequate care, for he failed to provide support for her after his move to Thibodeaux.
As demonstrated by the above factual comparison, the court of appeal incorrectly analogized this case to Schexnayder v. Schexnayder, supra. The instant case bears more similarity to Cleeton v. Cleeton, 383 So.2d 1231 (La. 1979). In Cleeton, the mother of three daughters, aged 7 to 15, became involved with another man after separation in fact from her husband. This man, Dave Breedlove, spent a great deal of *966 time at the home of Mrs. Cleeton and her daughters, frequently staying overnight or for whole weekends. As in this case, the trial court found that the children were accustomed to the care of their mother. Evidence at the trial failed to establish that Mrs. Cleeton had neglected any of the needs of her children, or that her children had otherwise suffered because of their mother's affair. The trial court noted that the mother's relationship with Dave Breedlove had not adversely affected the children at the time of trial and that she had discontinued her open association with him. The court of appeal reversed the custody award made by the trial judge. On rehearing, this Court, acknowledging the great weight to be given to the determinations of the trial court in a custody proceeding, reversed the court of appeal and reinstated the trial judge's award of custody to Mrs. Cleeton.
In this case, no evidence has been presented to indicate that Mrs. Stephenson's relationship with Eddie Gunby has had a detrimental effect on her young daughter. The trial judge specifically found that no impropriety had been conducted within the sight or hearing of the child. As in the Cleeton case, Mrs. Stephenson was no longer living with Mr. Gunby at the time of the permanent custody hearing.
Upon appellate review, the determination of the trial judge in child custody cases is entitled to great weight and will not be disturbed unless a clear showing of abuse of discretion is made. Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971); Schexnayder v. Schexnayder, supra. Reviewing the record in this case, we are unable to say that the trial court abused its discretion in awarding custody of Candice Ann to Mrs. Stephenson. Admittedly, the trial judge erred in going beyond the record for confirmation of the marriage of Mrs. Stephenson and Eddie Gunby. However, evidence which is in the record amply supports the intention of this couple to marry. The trial court's award of custody on the basis of this evidence is within his discretion.
For the foregoing reasons, the opinion of the court of appeal is reversed and the judgment of the trial court awarding permanent custody of Candice Ann Stephenson to Linda Stephenson is reinstated.
DENNIS, J., concurs.