412 So.2d 215 (1982)
Harvey DUPLANTIS, Plaintiff-Appellant,
v.
Linda MONTEAUX, Defendant-Appellee.
No. 8684.
Court of Appeal of Louisiana, Third Circuit.
March 18, 1982.
Dissenting Opinions March 24 and April 19, 1982.
*216 Patricia A. Thomas, Abbeville, and T. Barrett Harrington, Crowley, for plaintiff-appellant.
Theall & Fontana, Anthony J. Fontana, Jr., Abbeville, for defendant-appellee.
Before GUIDRY, FORET, CUTRER, DOUCET and LABORDE, JJ.
CUTRER, Judge.
This appeal arises from the wife's rule to increase child support, to terminate the husband's visitation rights with his two minor sons, and to hold him in contempt for violating the prior visitation order.
The facts presented in this case are:
Harvey Duplantis and Linda Monteaux Duplantis were judicially separated in 1976. The judgment of separation, dated September 7, 1976, granted Linda custody of the two minor children of the marriage, Harvey, Jr. and Kevin. Child support was set at $300.00 per month plus medical and hospitalization insurance. Harvey filed suit for a divorce on April 25, 1978, based on living separate and apart for one year. Judgment was accordingly rendered. The divorce judgment continued custody of the minor sons in Linda and it also continued the $300.00 per month child support plus medical insurance. Harvey was also granted reasonable visitation rights.
On August 11, 1980, Harvey filed a rule to set certain visitation dates and specific dates for payment of child support. The hearing was held; the trial judge took the case under advisement, and rendered his reasons for judgment on October 20, 1980. Judgment was signed January 5, 1981.
Harvey, a state trooper (Department of Public Safety), requested certain visitation times due to his varying schedule and being subject to call. The judgment also took into consideration the effort by the Department which was trying to let the troopers have alternate weekends free. The judgment further took into account the fact that Harvey was living with a woman to whom he was not married. Thus, the judgment which sought to provide maximum times for Harvey to see his sons also sought to protect these impressionable children from being subjected to exposure to a "questionable" lifestyle. The judgment fixed certain times for visitation but conditioned such visitation as follows:
"D. Mover's visitation privileges as described above are conditioned upon his restraining from keeping company with any woman to whom he is not married during times of visitation, except during daylight hours."
*217 On March 30, 1981, Linda filed rules for an increase in child support, contempt and termination of visitation rights. Harvey answered the rule and also filed a rule for contempt against Linda.
A hearing was held and judgment was rendered June 22, 1981, increasing child support from $300.00 to $450.00 per month retroactive to the filing of the rule on March 30, 1981; both parties were held in contempt "for their wilful failure to comply with the lawful orders of this court concerning visitation" and fined $150.00; and the visitation rights as set out in the January 5, 1981 judgment were continued in effect. Costs were divided equally between the parties.
From the adverse judgment, Harvey appealed. No answer or appeal was taken by Linda.
This appeal presents the following issues:
(1) Whether Linda adequately alleged and proved sufficient changes in circumstances and need which would warrant an increase in child support obligations owed by Harvey;
(2) Are the restrictions placed on Harvey's visitation privileges with his children unduly burdensome and unsupported by sufficient evidence; and
(3) Was there sufficient evidence adduced upon which the trial court could base its finding of contempt of a lawful court order by Harvey[1] and Linda.

INCREASE OF CHILD SUPPORT BY $150.00 PER MONTH
The first question presented is whether the evidence reflects a change of circumstances which would warrant an increase of $150.00 per month as child support.
LSA-C.C. art. 227 imposes upon the parents a mutual obligation of support, maintenance and education of their children. The amount of support is determined according to the needs of the child or children as well as the circumstances of those who are obligated to pay it. Prudhomme v. Prudhomme, 381 So.2d 906 (La.App. 3rd Cir. 1980), writ den., 383 So.2d 782 (La.1980).
The record reflects that the ages of the two boys, Harvey, Jr. and Kevin, in 1976, were 5 and 3 respectively. By the time of the 1981 hearing, the two boys were both attending school and engaged in the usual activities that accompany school age children. Linda explained that she was unemployed in 1976 but that she is now employed as a beautician working on a commission basis. Her gross income for 1980 was $8,784.98. Her "take home" pay was $555.00 monthly. She lists her total monthly expenses at $1,060.00; $465.00 for her expenses and $595.00 for the two children.
Linda testified that the increase in expenses since 1976, for the maintenance of the two boys, was due to the fact that they are now in school and participate in related activities. These factors increased the transportation needs, clothing needs and school expenses of the two boys. Also, since she is presently employed, a babysitter is required which costs approximately $150.00 per month. Of course, she must provide food and shelter for these two boys.
Harvey's salary in 1980 was $22,638.00. (His income in 1976 was $17,591.24.) He is on special assignment with the Louisiana State Police and his transportation is provided. He can also use this vehicle on a limited personal basis. He is also allowed $2.50 per day by his employer for his uniform allowance. Harvey's salary is augmented by Civil Service merit pay increases and overtime which he does accumulate.
Harvey was living with a woman, named Geraldine, to whom he is not married. She is employed and they equally share their living expenses. Geraldine owns the house in which they live. Harvey is also paying a $154.18 monthly car note on a vehicle purchased for and registered in the name of Geraldine. Harvey also pays a $67.61 monthly payment on a truck he purchased for his personal use.
Both Linda and Harvey list expenses which exceed their net income. Therefore, *218 we must determine which party is in the best position to reduce his/her living standard so that the children will not be in need. Such a determination can only be made upon a consideration of all relevant factors. We agree with the court's reasoning in Allbritton v. Allbritton, 393 So.2d 825, 826 (La.App. 2nd Cir. 1981), which stated:
"[T]hat the father's obligation to provide support for his children is a high priority obligation and that he is required to reduce his living expenses in order to have funds to pay his required child support."
Harvey is in the better position to contribute to the support of his children not merely because he is their father but due to his greater means, lesser living expenses by virtue of his roommate/paramour and reduced transportation expenses. He is not burdened with the costs of providing a home, care and supervision of his sons on a day to day basis as is Linda.
In determining child support, the trial court is vested with wide discretion. Such a determination will not be disturbed by an appellate court unless a review of the record indicates that the trial judge abused that discretion. We find no such abuse. Guinn v. Guinn, 405 So.2d 620 (La.App. 3rd Cir. 1981).
Due to the growing needs of his sons, coupled with his ability to provide more for their support, the judgment granting the increase of child support from $300.00 per month to $450.00 shall be affirmed.

VISITATION RIGHTS
Harvey contends, in the second issue, that the restrictions on his visitation rights (conditioned upon his restraining from keeping company with any woman to whom he is not married during times of visitation, except during daylight hours) are socially humiliating, overly burdensome and restricts his constitutional rights of travel and association. Duplantis contends that the facts of the case do not justify such a condition. We disagree.
It is well settled that the paramount consideration in determining visitation rights following a separation or divorce is the welfare of the child. Gowins v. Gowins, 391 So.2d 48, 49 (La.App. 3rd Cir. 1980); Reavill v. Reavill, 370 So.2d 175, 177 (La. App. 3rd Cir. 1979).
We find the case of Larroquette v. Larroquette, 293 So.2d 628 (La.App. 4th Cir. 1974) to be factually similar to the case at bar. There, the former wife opposed the husband's visitation with her daughter as he lived in open concubinage with his paramour; and whenever the daughter stayed overnight, all three, father, daughter and concubine would sleep in the same bed. The former wife argued that such a "lifestyle" was not conducive to her daughter's emotional and moral welfare.
In its modification of the visitation rights, the court made the following observation:

"A divorced father is ordinarily entitled to visitation with his minor child, when custody has been awarded to the mother. However, this right may be regulated, limited, or completely taken away by the court when the father's conduct in exercising the right could injuriously affect the child...." (Id. at 629. Emphasis ours.)
In the case at hand, while we find that the trial court did not abuse its discretion in looking out for the children's emotional and moral welfare as to prevent an undermining of the children's respect for the family institution by conditioning Harvey's visitation rights, we do feel that the order rendered herein on January 5, 1981, is overly broad and should be clarified. The order, as framed, could be interpreted to prevent the visitations from taking place at night in the presence of Harvey's close relatives, such as his mother. A reading of the trial judge's reasons for judgment discloses that certainly this was not his intention. For clarification purposes we shall amend *219 Paragraph D of the judgment dated January 5, 1981,[2] to read as follows:
IT IS ORDERED that the overnight visitations of the children with Harvey Duplantis shall not be carried out in any abode where, at the same time, Geraldine Trahan, or any other non-relative woman to whom Duplantis is not married, is also an overnight resident.
As amended, we shall affirm the trial court's visitation conditions.

CONTEMPT
The next issue raises the question of whether sufficient evidence was adduced upon which the trial court could base its finding of contempt of a lawful court order by Harvey.
Harvey avers that the trial judge erred in holding him in contempt. We disagree.
This is a civil contempt as defined by LSA-C.C.P. art. 221:
"A contempt of court is any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority.
"Contempts of court are of two kinds, direct and constructive."
LSA-C.C.P. art. 224 provides for constructive contempt:
"A constructive contempt of court is any contempt other than a direct one.
"Any of the following acts constitutes a constructive contempt of court:
* * * * * *
(2) Wilful disobedience of any lawful judgment, order, mandate, writ, or process of the court;"
The Louisiana Supreme Court held in Louisiana State Board of Medical Examiners v. Bates, 258 La. 1049, 249 So.2d 127, 128 (1971) "that willful disobedience of any lawful judgment, order, mandate, writ, or process of court is a constructive contempt of court." The court set out some general rules regarding contempt proceedings in Lambert v. Adams, 347 So.2d 883, 884, 885 (La.App. 3rd Cir. 1977), as follows:
"... First, the object and purpose of a contempt proceeding is to vindicate the authority and dignity of the court. It is not designed for the benefit of the litigants, even though infliction of punishment for contempt may inure to the benefit of the mover in the contempt rule. State ex rel. Duffy and Behan v. Civil District Court for Parish of Orleans. 112 La. 182, 36 So. 315 (1904); Robertson v. Robertson, 258 So.2d 125 (La.App. 2d Cir. 1972). Second, unless a litigant wilfully disobeys a direct order of the court issued prior to the contempt rule, he should not be held in contempt, even if his acts tend to frustrate the opposing litigant. State ex rel. Duffy and Behan, supra. Third, proceedings for contempt must be strictly construed, and the policy of our law does not favor extending their scope. Roy v. Berard, 227 La. 86, 78 So.2d 519 (1955); Junius Hart Piano House v. Ingman, 119 La. 1017, 44 So. 850 (1907). Fourth, as a general rule, contempt proceedings should not be resorted to where other specific remedies are provided by law. State ex rel. Duffy and Behan, supra; In re State ex rel. Hero, 36 La.Ann. 352 (1884); Junius Hart Piano House v. Ingman, supra."

From our review of the record, Harvey willfully disregarded the restrictions on visitation rights by having his paramour present after dark while visiting with his two sons on weekends. The trial court stated as follows in this regard:

"I think you all are more concerned with your fight between yourself than you are about the welfare of the children. That may not be true, but it comes through real loud and clear to me like that. And when the day of reckoning comesand it will come. I told you and I told your attorneys any time you want to bring the matter to the court, I'll be happy to consider it. Now what I have *220 noticed today is that both of you decide that you'll obey the court when you want to; or when you don't, you won't have to ...."
We find that the record reveals a reasonable factual basis for the finding of Harvey in contempt of court. The record, the testimony of the parties, and that of Harvey, Jr., establishes that the finding is not clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). The contempt citation will be affirmed.
For the foregoing reasons, the Paragraph D of the judgment of the trial court rendered January 5, 1981, is amended to read as follows:
IT IS ORDERED that the overnight visitations of the children with Harvey Duplantis shall not be carried out in any abode where, at the same time, Geraldine Trahan, or any other nonrelative woman to whom Duplantis is not married, is also an overnight resident.
In all other respects, the judgment rendered herein is affirmed. All costs of this appeal are assessed against Harvey Duplantis, plaintiff-appellant.
AMENDED AND AFFIRMED.
FORET and DOUCET, JJ., dissent and assign reasons.
FORET, Judge, dissenting.
I respectfully dissent in part.
This case involves a restriction of visitation rights of an out-of-custody father with his children, to the effect that these children cannot visit with the father in the presence of his live-in girlfriend during nighttime hours. There is no showing whatsoever, as I see it, from the record, nor is it argued by counsel for the mother of the children, that there is evidence in the record showing that the failure to impose these visitation restrictions would be adverse to the best interest of the children. I do not believe that a trial judge can impose such a restriction (upon a father who is paying $450 per month child support) without articulating, for the record, the reasons why such a restriction is necessary to protect the best interest of the children. This is particularly true where the record is devoid of evidence to support the restriction.[1]
In assessing if a parent's sexual lifestyle is cause for denying custody (note that the instant case involves only visitation), the courts have consistently held the ultimate determination must be whether the behavior was damaging to the child. This determination involves several factors:
(1) Is the child aware of the illicit relationship?
(2) Has sex play occurred in the presence of the child?
(3) Was the sexual misconduct notorious, bringing embarrassment to the child?
(4) What effect has this conduct had on the family life?
Monsour v. Monsour, 347 So.2d 203 (La. 1977); Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (La.1971); Howes v. Howes, 388 So.2d 1182 (La.App. 4 Cir. 1980), writ denied, 393 So.2d 738 (La.1980); Coltharp v. Coltharp, 368 So.2d 793 (La.App. 2 Cir. 1979), writ denied, 370 So.2d 578 (La.1979); Nale v. Nale, 409 So.2d 1299 (La.App. 2 Cir. 1982). There has been no evidentiary showing in the instant case relative to any of the factors mentioned above.
I am further motivated in dissenting herein by the recent Supreme Court decision of Stephenson v. Stephenson, 404 So.2d 963 (La.1981) wherein the Supreme Court actually awarded custody to a mother who was admittedly and openly living in open concubinage with a man other than the father. The Supreme Court found that the children were very well adjusted, and that no showing had been made that awarding *221 the custody to the mother would adversely affect the children, or would not be in the best interest of the children. True, that in Stephenson, the mother and the live-in boyfriend testified that they planned on getting married. While this is all well and good, such declarations are highly suspect and self-serving, and certainly was not the sole basis for the Court's decision.
Obviously in this case, the mother was very adamant about this restriction. To impose the restriction for no stated reason, other than that the restriction is insisted on by the mother, is to inject moralistic views into a matter which should not be judged on the moralistic views of the mother or that of the trial judge. If the contrary be true, we might as well sanction such restrictions based purely on race, color, religious or political beliefs or differences.
Although in the final analysis the restriction involved herein may prove to be in the best interest of the children, it is my opinion that the basis for such a restriction on visitation rights must be articulated by the trial judge, or at the very least, sufficient evidence to justify the imposition of the restrictions must appear from the record. There is no evidence in this record to justify such a restriction in this case, and I dissent from the majority's affirmance of the imposition thereof.
DOUCET, Judge, dissenting.
I join with Judge Foret in the reasons he has assigned in his dissent and assign additional reasons.
I fully believe that the trial judge should be afforded great discretion in matters of custody, including visitation. His obligation is a particularly difficult one which often requires that he monitor the children's welfare throughout their minority. The issue before us is not the propriety of appellant's lifestyle. The question is much deeper than this. The issue presented is whether the trial court's determination, limiting appellant's visitation rights, is truly in the best interests of the children, supported by the evidence and consistent with our Supreme Court's rulings regarding custody.
The record before us is absolutely void of any evidence that this non-custodial parent's living arrangement is injurious to his sons' well-being.[1] Nonetheless, the majority is willing to speculate otherwise thereby justifying the alienation of a father and his sons. There is no evidence nor allegation of this couple engaging in sexual relations in the presence of appellant's children or elsewhere. If anything, the record indicates that the father's friend, Ms. Trahan, is a mature, stable individual and theirs is a relationship of mutual respect and support.[2] Furthermore, the evidence establishes that Mr. Duplantis has provided well emotionally, physically, and financially for his children.
The problem is compounded by the application of differing standards to custody, and visitation, which, of course, constitutes part-time custody, e.g., Query: would the custodial mother be enjoined from associating with a man not her relative in the presence of her children after dark, particularly absent evidence of injurious effect upon her children? As the same monastic restriction is not, ipso facto, imposed upon a custodial parent, the same cannot be done in matters of visitation.
Appellee's reliance on Larroquette v. Larroquette, 293 So.2d 628 (La.App. 4th Cir. 1974) is misplaced. In Larroquette, the child had special emotional problems and, when visiting with the father, slept in the same bed with the father and his concubine. *222 The child returned from these visits emotionally upset. The Fourth Circuit found that such was not in the best interest of the child. The case is clearly inapposite to the present situation. The record does not disclose that the couple's intimate matters of private concern are exposed to the children or that there is any adverse effect upon them.[3]
In Stephenson v. Stephenson, 404 So.2d 963 (La.1981), the most recent and authoritative decision, a unanimous Louisiana Supreme Court reversed the appellate court and awarded custody to a mother living in open adultery as she was otherwise a good parent.[4] The court therein noted that "proof of adultery does not necessarily render morally unfit a parent who is otherwise suited for custody" and that the appellate court had incorrectly analogized the situation to Schexnayder, supra at footnote 3, as Mrs. Stephenson provided excellent care for her daughter and conducted no impropriety in the presence of her daughter. Our highest court has spoken on the matter as to when the state may usurp parental authority and substitute its own judgment. No different standard can be applied to the rights of the non-custodial parent. Accordingly, I believe the majority's declaration, to the effect that concubinage is ipse dixit detrimental to the best interests of the child, is in error.
The trial judge's grant of visitation rights prohibited the appellant from being in the company of any female (except one to whom he is legally married), in the presence of his sons, after dark. Such a ruling denies the children the companionship of their relatives after certain hours depending on the season, and, in its application, severs plaintiff's father-son relationship. Not only does this order of sexual segregation after hours deprive the children of visitation with their female relatives and friends, and, accordingly, deprive plaintiff of his associational rights, but it also prevents appellant from securing a female babysitter, or even in this case, visiting with his attorney. Should his sons become ill, requiring medical treatment and necessitating a house call, the appellant would technically be in contempt should the arriving physician be of the opposite sex. The majority opinion properly recognized that the aforesaid visitation restriction is overly broad, nevertheless they amend the decree in terms, which in the opinion of this writer, remain overly broad and are unjustified based on the record before us.[5]
Under Louisiana and common-law jurisprudence appellant cannot be held in contempt unless his acts constitute willful disobedience of a specific decree. Not only do I consider the decree invalid as being unwarranted, overbroad, and vague, but also the appellant's actions cannot be considered willful in the sense that there was a voluntary attempt to flaunt the authority of the court. As aforementioned, Mr. Duplantis' visitation rights were conditioned upon him not being in the presence of any woman to whom he was not married while in the company of his sons, after dark. Appellant made a sincere effort to comply with the terms of said decree, nonetheless he did so *223 violate the condition on one evening when the demands of his job as a state trooper required him to leave the home on a visitation week-end necessitating the assistance of a babysitter. Unable to find anyone else to stay with his boys, he called upon Ms. Trahan to help. Mr. Duplantis stayed with the boys, awaiting Ms. Trahan's arrival. When she arrived, he departed to attend to the emergency at work. Technically, contempt had occurred: it was dark, and the babysitter was a woman, and appellant waited for the sitter's arrival before leaving his sons, thus the two were temporarily together in the presence of the boys. I believe the term willful, as used in LSA-C. C.P. Art. 224, must be tempered by reason, that under the circumstances hereinabove appellant was not guilty of contempt.
For the reasons assigned, I respectfully dissent.
NOTES
[1] Linda did not appeal her contempt citation. Thus such is not before us for determination.
[2] The visitation rights set forth in the January 5, 1981 judgment were continued in effect by judgment rendered June 22, 1981.
[1] I am not unaware that in cases such as this, a trial judge will frequently call the children into chambers and personally discuss the matter with them (if they are of sufficient age to understand what's going on) and obtain information upon which to guide himself dehors the record, and thereby avoiding the trauma of courtroom testimony. However, there is nothing to prevent, and indeed the trial court judge should, in such circumstances, again in the absence of the children, dictate into the record his reasons for imposing the restrictions.
[1] Of related interest is the recent United States Supreme Court decision in Santosky v. Kramer, ___ U.S. ___, 102 S.Ct. 1388, 71 L.Ed.2d 599, wherein a New York provision allowing termination of parental rights upon showing only a "fair preponderance of evidence" was struck down. Most states require at least clear and convincing evidence. The present case would fail under either rule.
[2] In this regard it should be noted that counsel for appellee subpoenaed the father's roommate yet failed to call upon her to testify thereby creating a presumption that she would have testified adversely.
[3] Equally inapplicable is Schexnayder v. Schexnayder, 371 So.2d 769 (La.1979), a custody rule case wherein the mother had persisted in an open and public adulterous affair at hotels and other places, depriving the children of her care, despite community and family outrage. The import of Schexnayder was subsequently clarified in Stephenson v. Stephenson, 404 So.2d 963, 965 (La.1981): "Perhaps most pertinent to the issue of child custody, testimony in the Schexnayder case indicated that Mrs. Schexnayder had neglected the basic needs of her children during her affair."
[4] Accord: Cleeton v. Cleeton, 383 So.2d 1231 (La.1980) where the Supreme Court held that to change custody simply because of concubinage would be to punish the mother when there is no proof of detrimental effect on the daughters; Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971) wherein there was no showing that the parent's "indiscretions" had an adverse effect on the children.
[5] Appellee asks that the decree be amended to restrict appellant to no overnight visitations while he is continuing his "immoral conduct" and further forbid any visitations to take place at appellant's home. As defendant neither answered nor appealed, the majority properly rejects such requests.