DUFRESNE, Judge.
In this child custody case plaintiff, Marsha Dye Barnett, appeals from a judgment in favor of defendant, her former husband, James S. Barnett, granting his request for a change in custody of their ten year old son, Brent.
On December 19, 1983, James S. Barnett filed a motion to transfer child custody and terminate a previous order awarding Marsha Dye Barnett the sole custody of their son.
The parties were married in Lafayette, Louisiana, on December 20, 1969, and one child was born of this union, Brent Barnett on April 10, 1975. On October 24, 1980, judgment was rendered granting Marsha a divorce and sole custody of Brent. On December 19, 1983, James S. Barnett filed a Petition For Change of Custody seeking sole custody of Brent, and on May 7, 1985, the trial court rendered a judgment in favor of James Barnett and against Marsha Barnett, changing the previous child custody arrangement and awarding the father sole custody with extremely reasonable visitation to the mother. From that judgment, Marsha Dye Barnett, perfects this appeal and assigns the following errors for our review:
I. The judgment of the trial court changing custody of the parties’ minor child from his mother to his father was contrary to the evidence presented.
II. The trial judge abused his discretion in changing custody from Marsha Dye Barnett to James S. Barnett.
III. James S. Barnett failed to carry his burden of proof in showing that the minor child suffered a detrimental effect in the custody of his mother.
The underlying reasons for this appeal is that Marsha Dye Barnett contends the trial court clearly erred in changing the original child custody order. We disagree with this assertion.
Marsha Dye Barnett argues that Brent was a normal, well-adjusted ten year old *563 boy and was living in a comfortable, wholesome domestic environment.
This case was litigated with precision and the trial court carefully analyzed the facts and accurately applied the law. We are given enlightment in this matter from a well reasoned trial court opinion, and because we recognize the trial court’s exercise of diligence in pursuit of justice, we affirm. After reviewing the record we find no error in the court’s reasons for judgment and insert pertinent portions here as part of our opinion.
“In October of 1980, the parents of Brent Barnett were divorced. They had been living separate and apart for approximately two years at the time of the divorce and the mother, Marsha Dye Barnett (hereinafter referred to simply as ‘Marsha’) was granted custody and has retained same since the judgment of divorce. She lives in the Lafayette, Louisiana area and he now attends school in Youngsville, Louisiana.
James S. Barnett (hereinafter referred to simply as ‘Jim’), the father of the child, is presently married to Linda Nelson, a New Orleans attorney, and they live in the City of New Orleans.
Jim Barnett seeks the custody of his child and from its inception, the custody litigation has been an embroiled attack by the respective parties upon each other and there have been no holds barred.
Both sides were represented by able counsel and no bathroom or bedroom secret has been left unaired. The court has been presented with voluminous me-morandii, depositions have been taken and retaken and frankly, the matter has been over-tried.
The same incidents which the parties thought were of some value to their respective cases have been re-hashed and re-hashed. At the bottom of it all is the question of what is the court to do with this nine year old boy.”
In arriving at his decision the trial judge summarized the testimony and evidence intended to be prejudicial to Jim’s claim for custody as follows:
1. The arson charge levied by his father-in-law was merely a blind accusation and has no basis in fact.
2. The allegations that he brought his child late on Monday mornings is relatively unimportant considering the problems he had in maintaining visitation between New Orleans and Lafayette.
3. The accusation by Mrs. Lirette could or could not be factually represented. It could also be an overreaction by a person who is hyped up on this issue and considering the testimony of Mr. Bratton regarding other accusations of a similar nature by this witness discounts the effectiveness of this particular witness.
4. The testimony regarding the request by Jim that he watch his mother-in-law masturbate is one of the weirdest things I have heard in nineteen years on the bench. If it occurred it appears not to have been taken seriously, is very remote and the fact that Mr. and Mrs. Dye were friendly to Jim long afterwards effectively discredits the seriousness of this charge.
5. The attempt to make the urination contest a motivating factor to deprive the father of custody appears to be a grasping of straws. It is more likely that this was normal father-son camping fun and not performed in an evil context.
6. The issue of whether or not Jim was a user of marijuana, which could be likely in this day and age, is contradicted by the apparent wholesome lifestyle that he enjoys with his present wife and his son Brent on his visitation occasions.
7. The issue of whether or not Marsha had a venereal disease during her marriage was denied by him and the proof of her having a venereal disease is rather vague and obscure.
8. The fact that he had lived with his present wife prior to the marriage is not something applauded by the writer of this opinion but the realities of this *564 day and age are to reluctantly accept this standard. The fact that they have married and are enjoying a wholesome existence at this time is somewhat mollifying.
“OH TEMPORA! OH MORES!”
With regard to Marsha Dye Barnett the following are the relevant factors considered:
1. She apparently has a propensity to engage in random sexual encounters.
2. Her present affiliation with Mr. Schneider does not provide the wholesome atmosphere which would be consonant with the hearing of a child through puberty and adolescence.
The court concludes that both parents are devoted to Brent, both are deeply interested and involved in caring for him and that the court must resolve this matter on the question of which is better for Brent and not which is worse for Brent. He is torn between the equal love he shares with both parents.
The court does not award custody to the parent who has the more material things to offer to the child. His schooling appears to be adequate and he is maintaining a good level of education. It is apparent that his mother is attentive to his scholastic needs and does everything within her power to provide them.
The only problem the court runs into herein, after separating the proliferation of chaff from the wheat, is whether or not the present lifestyle of Marsha, which if history serves as a lesson, could remain unchanged except for a new partner. It is not the best of the two worlds of Brent.
The court has taken this matter in a very serious vein and it should be apparent to the reader of this opinion that all the testimony and all the evidence was considered. I do not consider Marsha an evil woman but I feel that somewhere along the trail she has not exercised the proper restraints which would signify a one hundred percent desire to give Brent proper moral background.”
The standard of appellate review in a custody matter is that great weight should be given to the trial court’s decision, and it should be reversed only when there is a clear abuse of discretion, Stephenson v. Stephenson, 404 So.2d 963 (La.1981). Our review of the record reveals no abuse of discretion here.
The sole criterion applicable in change of custody cases is the best interest of the child, LSA-C.C. art. 157; Turner v. Turner, 455 So.2d 1374 (La.1984).
In correctly finding that a change of custody to the father would be necessary, the trial court recognized a very active interest in his son and the willingness and ability to provide a wholesome, stable home environment. There is no evidence in the record which would support that Brent’s best interests are in jeopardy by placing him with his father.
Custody should not be changed when to do so would punish a parent for>past behavior, however, the record reveals that should Brent remain with his mother there would be a detrimental effect on the child.
This award of custody was not rendered as a tool to regulate Marsha Dye Barnett’s behavior or morals, rather the only objective was to maintain the best interest of Brent. We agree with the trial court that it was in Brent’s best interest to have custody changed in this case.
For the reasons assigned, the judgment of the trial court changing the child custody of Brent Barnett to his father is affirmed.
AFFIRMED.