State ex rel. Hero.

## No. 9092.

### THE STATE EX REL. ANDREW HERO.

#### Praying for Writs of Certiorari and Habeas Corpus.

The relator having in his possession certain movable property for which a writ of seques_tration was issued, and being ordered by the district judge to deliver said property to the sheriff, refused to obey the order and was imprisoned for contempt. He applied to this Court for writs of certiorari and habeas corpus. *Held* that his possession of the property not being under or by order of court, his refusal to deliver it to the sheriff, did not constitute a case of contempt, and that he is entitled to the habeas corpus from this Court.

*Leovy & Kruttschnidt* for the Relator.

*W. T. Houston*, Judge, Respondent, *in propria persona.*

The opinion of the Court was delivered by

FENNER, J.  The respondent judge, in his capacity of Judge of Division B of the Civil District Court for the Parish of Orleans, in a certain cause, entitled Succession of Kate Townsend, pending in said court, issued an order or writ of judicial sequestration, commanding the sheriff to sequester and take into his possession property belonging to said succession and, specially, certain movables stated therein to be in the possession of the relator, Andrew Hero.

The sheriff, in execution of said order, demanded from Hero the delivery of said movables, who failed to make such delivery, denying that he had possession thereof.  Thereupon the judge issued a rule upon Hero to appear at a fixed day and show cause why he should not be punished for contempt of the order and authority of the court. Said rule was duly served.  Relator made return thereto, denying that he had possession of the property, disclaiming any contempt or disobedience of the order of the court, and averring that he had delivered to the sheriff all property belonging to the succession, which was in his possession at the time when the writ of sequestration was issued or when demand thereunder was made by the sheriff.

After trial of the rule, the judge made the same absolute, and issued his commitment in the following words: "Whereas, Andrew Hero, Jr., has been found guilty of contempt of the authority of this court after due trial on rule, in this, that the said Andrew Hero failed and refused on the 28th of January, 1884, and still refuses to deliver to the Civil Sheriff of the parish of Orleans, notwithstanding due demand made on him by the said Civil Sheriff under a writ of judicial sequestration duly issued in the matter of the Succession of Kate Townsend,

commanding the Civil Sheriff to seize and to take into his possession all the effects, movables and immovables of the succession of Kate Townsend, the diamonds and other jewelry of the succession, notwithstanding demand duly made on said Hero and notwithstanding that the said Hero admitted in open court on the 26th of January, 1884, that he had the said diamonds and jewelry in his control and keeping, which diamonds and jewelry the court now finds and believes to be still within the control of the said Hero; and whereas, the said Andrew Hero has been found guilty of contempt of the authority of this honorable court after due trial, in obstructing the Civil Sheriff in the execution of said writ of judicial sequestration in failing to deliver the said diamonds and other jewelry to the said sheriff, notwithstanding the said Hero had them in his hands or under his control and in failing to state to said sheriff the place of the present concealment of the said diamonds and jewelry, now, therefore, you, the said Civil Sheriff, are hereby commanded, in the name of the State of Louisiana and of the Civil District Court, to convey the body of the said Andrew Hero, Jr. to the parish prison and there deliver him to the Criminal Sheriff and the keeper of the prison, who is hereby authorized and commanded to imprison the said Hero for the term and space of ten days, or until he shall deliver to the said Civil Sheriff the said diamonds and jewelry, (describing the same) and this shall be the warrant of the Civil Sheriff as well as the keeper of the parish prison."

Relator herein, alleging sundry nullities and irregularities, applies for writs of *certiorari* and *habeas corpus* and prays to be set at liberty, and that the order committing him to prison for contempt be declared absolutely null and void.

So far as the relief under the writ of *habeas corpus* is concerned, it must be denied for lack of jurisdiction, upon the grounds fully set forth in the case of State *ex rel.* Debuys vs. Civil Sheriff, 32 A. 1225.

On the application for the *certiorari*, the argument at bar took a wide and unwarrantable range. Our investigation must be confined to the questions of the regularity and validity of proceedings as disclosed on the face of the record. State *ex rel.* Wintz vs. Judge, 32 A. 1222.

The proceedings present no defect of regularity. The rule to show cause why he should not be punished for the alleged contempt was regularly served and tried and relator was allowed to produce evidence and argument in his defense.

The only question left is whether it appears from the face of the proceedings that the order committing relator to prison for contempt

was one which the judge was without power or authority to make, and, therefore, null and void, in which case he is entitled to relief by *certiorari*. State *ex rel.* Livesey vs. Judge, 35 A. 741.

The precise act for which relator was condemned for contempt, appears not only on the face of the rule, but of the order of commitment itself.

If the order, with disobedience of which the relator is charged, was one in its nature not enforceable by process for contempt, then the order committing him for contempt is unauthorized and null and void.

What was the order? As already stated, it was an order commanding the sheriff to sequester certain property belonging to the succession and stated to be in the possession of relator. Conceding that after notification and demand by the sheriff, this had all the effect of an order directed to relator commanding him to deliver, would his refusal subject him to punishment for contempt? It is not pretended that relator held the property under any mandate or authority derived from the court, or was, in any peculiar manner, subject to its orders. He was a third person so far as the succession is concerned.

It appears clear that such an order could not have a greater effect than a writ of possession issued in execution of a final judgment decreeing the delivery of a specific object: yet, even in such a case, the party condemned could not be punished for contempt for refusal to deliver. On the contrary, the Code of Practice specifically provides a different remedy, viz: in an action for damages, or by distraint of the other property of the debtor. C. P. 635-6, *et seq.*

It thus appears that our law does not authorize the enforcement of final judgments, much less of *ex parte* orders, directing the delivery of property, by process for contempt.

We lay this down as a general proposition. There may be exceptions, but certainly the case at bar is not one.

The relator does not confess possession and defy the authority of the court, even if that would justify such a proceeding, on which we express no opinion.

On the contrary, he denies under oath that he had possession when delivery was demanded, or even when the order of the court was issued. If this be true, it may be impossible for him to comply with the order of the court, and in that event, under the commitment as it stands, his imprisonment would be for life.

It is true the court finds the fact against him, but this is not sufficient to make the case an exception to the rule above announced. The

effect of the proceeding here is to impose imprisonment as a means of enforcing obligations, or as a penalty for failing to fulfil obligations.

This our law does not, save in exceptional cases, permit. Our law is quite as exact in providing for the "execution of judgments requiring something to be given or something to be done," as for the "execution of judgments directing the payment of a sum of money." These form the subjects of separate sections of the Code. There seems no more authority for issuing process of contempt in aid of one than of the other execution.

It is, therefore, ordered, adjudged and decreed that the order committing relator to prison for contempt be declared null and void and be set aside.

---

### DISSENTING OPINION.

BERMUDEZ, C. J.   It is indisputably settled in the jurisprudence of this State that, in matters of *habeas corpus*, this Court has no jurisdiction, unless in cases in which an appeal lies. State *ex rel.* Geele; State *ex rel.* Wood, 30 A. 450, 672; 32 A. 1225; State *ex rel.* Brown; State *ex rel.* O'Mally, O. B. 56, fol. 661, 695; 28 A. 82, O. B. 53, p. 44; p. 279, etc.; 35 A. p. —, etc.

It is also unquestionably finally determined that, in cases of *certiorari*, where the remedy is invoked as auxiliary to relief and *habeas corpus*, this Court has likewise no power to revise the proceedings where it has no jurisdiction over the main matter—that is, the *habeas corpus* application. Same authorities, specially those of Brown and O'Mally.

It is, besides, established by adjudicated and unassailed precedents, that in original and independent cases of *certiorari* instituted to test the validity of proceedings in unappealable cases, this Court will not inquire into the intrinsic, but merely into the extrinsic, correctness of the proceedings attacked; in other words, that its investigation is to be restricted to matters of form and not of substance. Same cases and others referred to in those of Brown and O'Mally.

In matters of contempt, this Court has decided that it will not interfere whether the complaint appear in the shape of an application for *habeas corpus*, or *prohibition*, or *certiorari;* in the first instance, because the matter is not appealable; in the second, because it is not the proper remedy; in the third, whenever the proceedings appear to have been regularly conducted, unless in cases of manifest usurpation of power

and consequent abuse of authority, and unless the commitment is invalid on its face. Same cases, etc.

In a case of contempt, where the act done had been charged to have been committed out of the presence of the court, where the offender had been sentenced without a hearing, this Court has annulled the proceeding, for the reason that, in the particular instance, a rule should have been issued and the offender should have been tried contradictorily, allowed to introduce evidence and have himself represented by counsel. State *ex rel.* DeBuys, 32 A. 1256.

In an anterior case a witness, imprisoned for contempt for refusing to answer a question which the court had ordered him to answer, applied for a *certiorari* but was denied the relief sought.

The court there held that the writ is limited to cases where it appears on the face of the record that the proceedings are absolutely null.

The court took occasion to say that, if there had been abuse or even error in the exercise of the judicial power conferred upon the district judge and if the relator were a sufferer thereby, and even if the law provided him no redress, his case would merely illustrate the inevitable imperfections of all human devices to secure an infallible administration of justice and flawless protection of rights.   *   *   *   Mere error in the decision of questions properly submitted to their determination (inferior courts) and regularly determined, can only be corrected in the exercise of a jurisdiction purely appellate."

The relief asked was denied. State *ex rel.* Wintz, 32 A. 1225.

In another case in which the power of the court to issue an injunction had been questioned, this Court held that, as there was no warrant in law authorizing the court to issue the writ, although provisionally, a disregard of its prohibition could not be treated as a contempt and the offenders were released. State *ex rel.* Livesey, 35 A. 741.

So that it is clearly established that whenever the proceedings to punish for a contempt appear to have been regularly conducted and the commitment is in proper form, this Court will not interfere, unless in cases of evident hardship and oppression.

In the present instance it is manifest that this Court has no jurisdiction as far as the *habeas corpus* application is concerned. The *certiorari* proceeding having been invoked as an ancillary proceeding to that for a *habeas corpus* should likewise be *non coram judice*, under the maxim that the accessory follows the principal.

But were it not so, taking the application for a *certiorari* before the court to be an independent, as those in the DeBuys and Livesey cases,

it is glaring that the relator was proceeded against by rule, that he was allowed to adduce evidence and otherwise to be contradictorily heard, that the commitment shows on its face these contradictory proceedings and that after such trial he was found guilty of contempt and was condemned to imprisonment.

Before such proceedings the court should pause, and mindful of the importance of the exercise of the power of punishing for contempt, which is inherent as a matter of necessity in all courts, no abuse of authority or oppression appearing, the court should decline to interpose its authority to annul the proceeding to release the offender.

But it is contended that the commitment sets forth a state of facts which, even if true, would not justify a punishing for contempt, and it is pointedly claimed that where a court directs a party not connected with the suit to deliver to a sheriff property in his possession, but to which no claim whatever is set up, and such party refuses thus to deliver the property, this is not contempt and the recreant party cannot be punished for such refusal to obey, because the court has no power to enforce obedience to its orders in that manner.

Now, in order to establish that theory, a parallel is sought to be established by punishment for contempt, and judgments final and executory directing the delivery of property by a party to a suit to the other, and it is insisted that because the law provides in what manner *such* judgments are to be enforced and executed, resort to punishment for contempt cannot be had *a fortiori* against persons who are not parties to the suit and who cannot be placed *in duriori casu.*

There is no parity between the cases, either in their nature or in their character.

Judgments to deliver property are in favor of parties litigant, they are rendered in a civil matter, and their enforcement and execution are specially provided for.

Decrees or orders under which are issued commitments to punish for contempt are in vindication, not of the rights of litigants, but of the authority of the State, represented by a judicial officer.   They are *quasi* criminal.   They concern the well-being and good order of society and are the only mode in which the authority of courts can be made to be respected.

If the doctrine is recognized, that refusal to deliver property to the executive officer of the court, when a special order is made therefor, cannot be punished, when the refusal emanates from one not a party to the suit, and that such order to deliver can only be enforced against

State ex rel. Hero.

such party in the same manner that a judgment for delivery of property against a party to the suit, can be, then let it be said that the administration of justice may become a farce and a mockery.

There can be no doubt that the property in question must be considered as property in the custody of the law, belonging as it does to a succession; that the court having found that it was in the possession of the relator, who, claiming no title to it and, therefore, without warrant, refused to deliver it to its executive officer, it was a clear case of contempt. State vs. Start, 7 Iowa, 501; Hull vs. Thomas, 3 Edw. 236; Williams vs. Durnelle, 51 Cal. 442; Smethurts Case, 2 Sandf. 724; People ex rel. vs. Brown, 4 Paige, 405; Noe vs. Gibson, 7 Paige, 513; Wells on Jurisdiction, p. 177, sec, 178; Hurd on *Habeas Corpus*, 7.

While it cannot be denied that in the exercise of our supervisory powers, we may, by *certiorari*, inquire into the validity of a commitment for contempt, it is likewise indisputable that where the commitment was issued after a contradictory proceeding and shows on its face that the facts found constitute justification for the punishment, this Court shall and cannot interfere. Commonwealth vs. Newton, 1 Grant's Cases, 453; Willamson vs. Lewis, 39 Penn. St. 30; *Ex parte* Perry, 2 Daly, N. Y. 530; Maryland *ex parte* Maulsly, 13 Maryl. 621.

The district judge was right in setting forth the facts found by him. It is the duty of the inferior courts always so to do, in order that the superior court may be fully advised as to the rightfulness of the commitment, for, otherwise, it would be in the power of such courts, by making a general warrant of commitment, to deprive the higher court of its right to review. Hurd on *Habeas Corpus*, pp. 414, 415, note.

Considering, therefore, that the commitment in this case was issued by a competent court, that the proceedings were regularly instituted, contradictorily conducted and determined; that the lower court had the power to punish for contempt, for the omission, failure or refusal to do the act which it thought should be done, namely: the delivery to the sheriff, of personal property belonging to a succession, in the custody of the court, to which, the relator raised no title and which the court found was in his possession when the rule for contempt was tried and decided, I think that the application for relief should be dismissed.

Manning, J. I concur with the Chief Justice.

Rehearing refused.