(44 South. 850.)

No. 16,808.

JUNIUS HART PIANO HOUSE, Limited, v. INGMAN.

In re ABADIE et al.

(Oct. 21, 1907. Rehearing Denied Nov. 18, 1907.)

1. CONTEMPT—PROCEDURE.

Generally proceedings for contempt are subject to strict construction.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Contempt, § 92.]

2. SAME.

The policy of the law is not favorable to extending their scope.

3. SAME—EVIDENCE.

The wrongful act was not committed in presence of the court, nor while the officer was executing a writ of sequestration directed against the contemnor complained of.

4. SAME.

He had seized the property under a writ of sequestration. A keeper had been appointed and stationed to guard the property during the night. In addition there was an agreement arrived at that the one in possession would deliver the property on the morning following the seizure.

5. SAME.

The second step taken, during which there was a difficulty, has every appearance of a personal matter between the deputy and the person in possession. For the wrong committed there is ample remedy, other than proceedings for contempt.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Contempt, § 111.]

Monroe, J., dissenting.

(Syllabus by the Court.)

Action by the Junius Hart Piano House, Limited, against Charles Ingman. Judgment for plaintiff. H. B. McMurray, sheriff, and the Junius Piano House, obtained a rule against John D. Abadie and James F. Abadie for contempt of court. Judgment against defendants in rule, and they apply for writs of prohibition and certiorari. Rule made peremptory, and judgment of the district court reversed, and defendants in rule discharged.

Richardson & Soulé, for relators. Respondent Judge (Solomon Wolff, of counsel), pro se.

BREAUX, C. J. Contempt of court is the charge which gives rise to the question before us for decision.

Plaintiffs in rule, H. B. McMurray, civil sheriff, and Junius Hart Piano House, complained of the conduct of the Abadie brothers, and urged that it amounted to a contempt of court, in that they obstructed the execution of a writ of sequestration sued out by the Junius Hart Piano House, Limited; that

these parties (Abadie brothers) threatened the deputy sheriff with violence while the deputy was attempting to execute the writ of sequestration; that John D. Abadie took the notice of seizure and threw it violently on the floor; that he also snatched the writ from the hands of the deputy and tore it into several pieces.

It is alleged that in all this the brother, James F. Abadie, took part and aided in the alleged resistance.

The Abadies at first pleaded the court's want of jurisdiction, and averred that they were not parties to the suit in which the writ of sequestration issued; that there were no orders of the district court against them, and no proceedings.

The exception was overruled in the district court.

In the answer, which was thereafter filed, they averred a state of facts in many respects different from that alleged by plaintiffs in rule.

John D. Abadie, the principal defendant, specially averred that he held the piano subject to some right of pledge or lien as landlord for rent and board.

It appears that the deputy, whose name is Marin, handed the notice of seizure to this Abadie, which was addressed to Chas. Ingman, the owner of the piano, who was out of the state.

This notice of seizure advised Ingman of the seizure of the piano, the possession of which Abadie testifies was asked by Marin, the deputy sheriff.

This defendant in rule averred that he knew nothing of the suit filed by the Junius Hart Piano House, Limited, and that he informed Marin, the deputy, that if he found that it was proper for him so to do he would deliver the piano the morning following; that upon this assurance on his part the deputy and the representative of the Hart House left.

This all occurred at about 6 o'clock p. m.

It was about 8 o'clock p. m. of the same day, an undue hour of the night, when the officer returned and again demanded the piano; that the deputy, despite John D. Abadie's objections, attempted to take possession; and that it was then that a physical altercation arose between the deputy and Abadie. It was soon over, it seems, and the deputy left.

This defendant says that he did not snatch any paper from the hands of the deputy, but that in the altercation a paper which this deputy had in his hands was slightly torn; that he had no intention of defacing or tearing it, and that he did not in the least wish to treat any order of the court with defiance or the least disrespect; that he did not refuse to deliver the piano, but, on the contrary, had agreed to surrender it, as before stated.

The complaining deputy, Marin, was the only witness for the plaintiffs in rule, while the two defendants (Abadies) testified and two witnesses who were present at the time of the occurrence.

The testimony of the complaining deputy is contradicted by the testimony of all the witnesses for the defendant. According to this deputy there was violence offered. There was a paper torn and other acts committed.

According to the testimony of the witnesses for defendant, there was no resistance offered to give ground for serious complaint.

The judge of the district court rendered judgment against the defendants in rule and condemned each to fine and imprisonment.

The judgment is now before us for review.

Other facts are stated in the opinion. There are three separate and distinct incidents in the course of this cause.

We have noted that the deputy sheriff, by whom the notice of seizure was made, held a writ of sequestration, addressed to Ingman, the owner of the property—that is, of the piano sequestered; that, armed with this writ, he (the said deputy) went to the place

where the piano was and met the wife of one of the defendants. The notice addressed to Ingman was handed to Mrs. Abadie, and subsequently it was handed by her to her husband and read by him in the presence of the officer, Marin, by whom the papers were served.

As relates to the notice of seizure as against Ingman, it was complete enough if the intention was to reach the property through John B. Abadie. In the absence of Ingman, and in view of the facts of the proceedings, it was about the only service that could have been made. It was made, and due return of it made to the court.

An understanding was arrived at between the officer and the principal defendant, John B. Abadie, to let matters rest until the next morning, and that then the latter would deliver the property; that is, the piano.

This is the first incident of the case.

None the less, despite the understanding, the officer returned to the defendant's place of business and residence at the hour of about 8 o'clock p. m. and handed him a note of seizure, which he evidently had made out himself, addressed to John B. Abadie.

This Abadie was not named in the writ at all, as the writ was made out, and as we have seen, exclusively against the name of the owner, Ingman.

A difficulty arose between the parties. The officer seeks to have it appear that he returned to make service of the second notice, while, on the other hand, defendant in the proceedings for contempt seeks to have it appear that the officer returned to take away the piano, and that it was while he was attempting to move it that the difficulty arose.

The officer went slightly beyond the requirement of the writ of sequestration he held. He had already given notice to the one who had the piano in his possession. He had placed a keeper in front of the house of Abadie, in order to make it certain that the piano would not be taken out of the house during the night. After this precaution he did not remain satisfied, but came to an understanding with defendants that the musical instrument would be taken out without objection in the morning.

Despite this, the officer returned in the early part of the night for the purpose of seeing further into the matter of seizing the piano. This return was in disregard of the agreement arrived at, to which we have just referred.

Defendants in rule were not parties to the sequestration proceedings. They were third persons. It does not appear with any certainty that they knew of the nature of the papers which the officer held in his hands, and which fell to the floor during the trouble that arose.

One may be a contemnor by unlawfully hindering, delaying, or interfering, or attempting so to do, with the proper execution of legal process. 9 Cyc. p. 20, note 4 K.

Maltreatment of the server of the writ is also contempt, where there was proper and necessary execution of the legal process. Here there was no proper execution of legal process. The writ of sequestration did not authorize the proceedings against defendants in rule. Besides, there was no reason for notice of seizure after the agreement before mentioned had been entered into.

It has been decided that a mere violent snatching of an original writ of summons from the person serving it was not contempt. 9 Cyc. p. 20, note 25.

In another case the officer had been shaken a little. It was held not contempt, or, at any rate, that it was not an obstruction of the court's process.

In the present case it does not appear that the defendants in rule interfered with property. It was legally in possession of one of them, where it continued to remain with the consent of the officer.

The third incident in the chapter of incidents was the calling of two officers from the

sheriff's office the day after the trial of the defendants here in rule. There was much useless talking on the part of the defendants. Improper words should not have been used, but they are not urged as constituting part of the contempt complained of.

Besides, it is doubtful if any attention should be paid to words uttered that are more injurious to the one by whom uttered than to those against whom they are directed.

This was the line of conduct followed by the officers in this instance.

Contempts are direct or constructive.

There is no question of direct contempt here.

Constructive contempt (not in the court's presence) tends, none the less, to embarrass the due administration of justice.

In this instance it was not constructive contempt, for the trouble which arose did not embarrass the due administration of justice. The property was in gremio legis. Besides, the steps taken by the officer were not necessary to the sequestration. Furthermore, the court's jurisdiction was not interfered with; for the officer had no right to process. It was not misconduct toward the court. If there was misconduct, it was towards the officer of the court under circumstances that render the act personal. It was a personal affair between the parties to it.

As to improper words used by the defendants in the excitement, it has been held in regard to improper words that language not uttered in the courthouse, nor in the immediate view and presence of the court or any of its branches, nor within the sight or hearing of the judge, cannot constitute a contempt. Century Digest, verbo "Contempt," p. 2382.

"For contumelious words or other insult not in his presence the judge ought to proceed by indictment." Id.

There was no judge present in our case.

Contempt has also been defined as misbehavior in the presence of the court, or so near thereto as to obstruct the administration of justice, or the misbehavior or disobedience to any of the lawful orders or commands of the court.

As to the first part of the definition, it has not the least application, and the last part is equally without application; for there was no disobedience on the part of the defendant of any lawful order or command of the court.

"The court will not punish for contempt when an act has not been committed in its presence." Cent. Dig. vol. 10, col. 2386, § 9.

Early in its jurisprudence this court held that an insult to a parish judge acting as an auctioneer is not a contempt of him in his judicial capacity, and cannot be so punished. Detournion v. Dormenon, 1 Mart. (O. S.) 138.

If anything, it was a breach of the peace, and not a contempt of the court.

This court said, in Ex rel. Duffy Case, 112 La. 182, 36 South. 315:

"Where specific remedies are provided by law, they must be resorted to."

There is other remedy, notably section 865 of the Revised Statutes.

We do not assert that proceedings for contempt may not be taken in a case where there is other remedy. But we do say that, where it is not manifest that there is a rule authorizing the proceedings for contempt, the parties should seek to have the clearly expressed criminal law enforced applying to the case.

Lastly, the policy of the law is against extending the scope of proceedings for contempt. 4 Ency. of Pleading & Practice, p. 770, note.

The law in cases for contempt is strictly construed. Id.

For reasons assigned, it is ordered, adjudged, and decreed that the rule nisi issued in this case be made peremptory. The judgment rendered by the district court in this case, and reviewed in these proceedings, is annulled, avoided, and reversed, and the de-

mand of plaintiff in rule rejected, and defendants in rule are discharged.

NICHOLLS, J., concurs in the decree. MONROE, J., dissents.