**78 So.2d 519**

**J. Maxime ROY, Jr.,**

**v.**

**Odette BERARD.**

**No. 42122.**

Feb. 14, 1955.

J. Minos Simon, Lafayette, for relator.

. Joseph J. Piccione, Lafayette, for respondent.

MOISE, Justice.

Remedial writs were granted by this Court to review a judgment of the trial court finding the defendant guilty of contempt of court and sentencing him to serve five days in the parish jail, unless he paid, within ten days, alimony in the sum of $100 for the support of his minor child for the months of July and August, 1954, subject to a credit of $90 for a clothing bill if paid within the stipulated time.

Relator, J. Maxime Roy, Jr., and his wife, Odette Berard, were divorced in 1948, and by judgment of court he was ordered to pay $50 per month alimony for the support of their minor child, Randie Annie Roy.

On trial of the rule for contempt, the husband testified that he and his former wife had an agreement whereby he was to pay for the tuition of the child, including room, board and school fees, at St. Joseph's Academy in Baton Rouge, Louisiana, during the school year, and that since such amount far exceeded the alimony he would not pay for the child's support during the summer. This agreement was adhered to for the last three years. However, the wife contended that she needed money for the child's support during the summer months and denied that she agreed that the husband would not pay during vacation time.

The evidence reflects that the minor child attended St. Joseph's Academy in Baton Rouge, Louisiana, for the last three years, rooming and boarding at the school; that the father has paid all of the bills; and that he also provided Randie Annie, their child, with additional spending money. No formal demand had previously been made upon the father for the child's support during the summer months, at which time Randie Annie resided with her mother or her mother's parents.

The wife testified that prior to this year her parents had provided for the support of the child during the summer, but that her father is presently ill.

The evidence discloses that during the summer of 1954, the wife charged almost $90 to the minor's father for the minor's clothing. He agreed to pay the bill, but had not satisfied the obligation at the time of the trial on rule for contempt.

The trial court found that the tuition and expenses, which were in excess of $50, were paid in June, 1954, and that the father paid $55 for the child's support during September, 1954.

We quote the reason for judgment with respect to the father being in contempt for the months of July and August, 1954:

"Of course, it is evident from the facts, and it is not disputed, that there is no single monthly payment made during the year 1954 which complies strictly with the judgment of the Court,

because the judgment of the Court orders the defendant in this rule to pay the alimony to the wife for the benefit of the child. I think the evidence supports the finding that only $25 was paid to the wife directly since January 1954 as alimony for the child. So the Court takes the position in this case that there is an acquiescence on the part of the wife to these irregular payments. This is not condemned by the law, the law doesn't legalize the wife's consent to the irregular payments, but still, nevertheless, such a circumstance has to be taken into consideration in prosecution for contempt, and that is why the Court has permitted the reception of the evidence which it has permitted in this rule.

"The Court finds that in the four months in question that the defendant in rule paid during the month of June the sum of $70, which was the sum in excess of the amount required by the judgment, and in view of the fact that these irregular payments had been condoned during previous months, as a matter of fact, for years, the Court cannot find that the technical violation during the month of June is subject to censure. The same is true during the month of September. The defendant in rule paid a sum in excess of the amount due during the month of September. However, during the months of July and August nothing was paid although the defendant in rule assumed

the obligation of paying the sum of $89.10 for some clothes which the wife purchased for the child; that this sum has not yet been paid."

██ Under the circumstances disclosed, there is not any contempt or defiance of the Honorable Court by the father not to pay the alimony, and there was no intent to disregard the order of the Honorable Court. The wife and husband entered into a stipulation for the best interest of their minor child. It would seem that the act of the father in permitting almost $90 worth of clothing to be charged to him for payment was an act to aid the support of the child for July and August, 1954.

The trial court goes on to say:

"The Court finds that the father is in contempt of the judgment of this Court for not paying the alimony during the months of July and August, but in view of the circumstances, the Court will suspend the sentence of imprisonment in the parish jail for the term of five (5) days, that is, will place the defendant on probation, the condition of the probation being that he shall pay the alimony during the months of July and August, and that should he pay the sum of $89.10, the Court observes and acknowledges the agreement of the wife made on the witness stand to credit this amount due to the amount due for those two months. It is true that the defendant in the rule has paid more

than is required by the judgment of the Court and this is a situation that the Court does not encounter too often in these alimony matters."

Our LSA–Constitution, in Article 19, Section 17, on the subject of Contempt, declares:

"The power of the courts to punish for contempt shall be limited by law."

In the case of Junius Hart Piano House v. Ingman, reported in the 119 La. 1017, 44 So. 850, the syllabus reads:

"1. Contempt—Procedure.

"Generally proceedings for contempt are subject to strict construction."

██ Our learned brothers below declared that such was a technical contempt. We do not believe that a technical contempt is contemplated. The law must be construed strictly as to an actual contempt, by the union of act and intention, to disobey the orders of the Honorable Court.

In the same syllabus of the case quoted, supra, we find:

"The policy of the law is not favorable to extending their scope."

which means to extend the scope beyond the limitations imposed by law.

In the suit of City of Gretna v. Rossner, 154 La. 117, 97 So. 335, 336, we find the following statement:

"A contempt proceeding, however, is neither a civil nor a criminal cause in the proper acceptation of these terms, as its object is to vindicate the author-

ity and dignity of the court. Contempt is not a statutory crime against the state, though considered in some degree as a criminal act, but is a disobedience of some rule or order of the court, or disrespect for the court."

We believe that the safest rule of interpretation is to look to the nature and object of the particular powers conferred, the duties and rights with all the light and aid of contemporary history; to give to the words of the Constitution and our decisions, the operation and force consistent with the legitimate ends as may fairly secure to attain the limitations of the right to punish for contempt.

The relator admits in his testimony that he is liable for the clothing bill herein involved; the child has the clothes. The matter of payment of that bill is one left to the husband and the clothing establishment. Of course, he will have to pay, and we do not think that his procrastination in the paying of this bill should place him in contempt of the orders of the Honorable Court. He has paid more than the remaining $10. See LSA–R.S. 13:4206; Otillio v. Otillio, 119 La. 965, 44 So. 799.

For the reasons assigned the writs are made peremptory, and the judgment of the trial court finding relator guilty of contempt of court is reversed and set aside. The parties are to pay their own costs.