EMILIO M. GARZA, Circuit Judge,
concurring in part and dissenting in part.
I concur in almost every aspect of the majority opinion except one: I would hold that Judge Gonzales is not absolutely immune from prosecution for holding Malina in contempt of court.[1] This case is not a case of “excess jurisdiction,”[2] but rather a case of “clear absence of all jurisdiction.”[3] Crucial are the following facts:[4]
[A] Baton Rouge city police officer appeared at Malina’s home and told Malina that Judge Gonzales wanted to see him in his court at 9:30 a.m. the next day. The Officer stated that he was there unofficially as a favor to Judge Gonzales, but the Judge could issue a bench warrant for Malina’s arrest if Malina did not appear in court.
Malina' appeared at court the next morning, but found the courtroom closed to the public. When Judge Gonzales arrived, he instructed Malina to wait in the empty courtroom. A few minutes later, Judge Gonzales, a bailiff, and a deputy sheriff entered the courtroom....
*1128 [Judge Gonzales] ■ read from a book and stated that judges are police officers with the authority to arrest individuals. The Judge handed a green slip of paper to the bailiff and told Malina to appear before the duty-judge on May 2, 1988, concerning traffic violations. Malina asked with what he had been charged, and Judge Gonzales responded with “fleeing to allude,” “resisting an officer,” “public endangerment,” “disobeying an officer,” “reckless driving,” and “leaving the scene.” The Judge added that the charges would convince Malina to obey an order and pull over the next time anyone with a flashing light pulled alongside him. Malina responded that he did not feel comfortable stopping for unmarked vehicles with flashing lights because anyone can buy such a light.
At this point, Judge Gonzales cited Malina with contempt and sentenced him to five hours in jail. Malina was handcuffed, fingerprinted, photographed, and imprisoned.
Maj. op. at 1123-1124.
Although I agree that Judge Gonzales, as a Louisiana state judge, had the power to punish for contempt, see La.Code Civ.Proc.Ann. art. 222 (West 1960), and that the issuance of the contempt citation occurred within a courtroom, no case was pending before Judge Gonzales.[5] He therefore lacked subject matter jurisdiction[6] for the purpose of judicial immunity. See Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 351 (1871); Adams, 764 F.2d at 298; Brewer v. Blackwell, 692 F.2d 387 (5th Cir.1982). Moreover, Judge Gonzales’ exercise of his contempt power presupposed, rather than conferred subject-matter jurisdiction.[7]
The only reason Malina was in the courtroom was because a Baton Rouge police officer — on an unofficial visit on behalf of Judge Gonzales — asked Malina to appear the next day. The jurisdiction prong for judicial immunity requires that judges possess the authority to perform actions relating to a matter before them. See, e.g., Mireles v. Waco, - U.S. -, -, 112 S.Ct. 286, 289, 116 L.Ed.2d 9 (1991) (“[S]uch an action — taken in the very aid of the judge’s jurisdiction over a matter before him — cannot be said to have been taken in the absence of jurisdiction.” (emphasis added)); Stump v. Sparkman, 435 U.S. 349, 351-52, 98 S.Ct. 1099, 1102-03, 55 L.Ed.2d 331 (1978) (stating that sterilization petition was before state court judge); Adams, 764 F.2d at 298 (stating that the objectionable contempt order arose out of a criminal case involving the plaintiffs sons, over which the judge presided). Moreover, Judge Gonzales’s actions did not occur while he had subject matter jurisdiction over any other claim. See Adams, 764 F.2d at 297 n. 2 (citing as an example of a judicially immune action, the situation where a judge cites a person raising a disturbance immediately outside his courtroom window for contempt, assumedly while ongoing proceedings are before the judge). Therefore, at the time Judge Gonzales cited Malina for contempt, he was acting in “clear absence of all jurisdiction.” [8]
*1129 Furthermore, the factors that support immunity for judicial acts are not implicated by Judge Gonzales’s conduct. As Chief Justice Warren stated:
It is a judge’s duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. His errors may be corrected on appeal, but he should not have to fear that - unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decisionmaking but to intimidation.
See Pierson v. Ray, 386 U.S. 547, 554, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967); see also Thomas v. Sams, 734 F.2d 185, 189 (5th Cir.1984) (quoting Pierson). There was no case pending before Judge Gonzales when he held Malina in contempt. Thus, the policy behind judicial immunity — encouragement of “fearless decisionmaking” free from the intimidation of vexatious litigation — has no. bearing on Judge Gonzales’s conduct. Conversely, the dangers implicit in his conduct— over-reaching from the joinder of executive and judicial powers' — have been apparent since before the Constitution. See The Federalist No. 47, at 303 (James Madison) (Clinton Rossiter ed., 1961) (“Were the power of judging joined ... to the executive power, the judge might behave with all the violence of an oppressor.” (quoting Montesquieu)).
I would therefore hold that Judge Gonzales is not judicially immune for the issuance of the contempt citation and sentencing, because these “actions ... [were] taken in the complete absence of all jurisdiction.” Míreles, - U.S. at -, 112 S.Ct. at 288. Accordingly, I would affirm the district court’s denial of the motion to dismiss in its entirety.[9]

.I am acutely aware of the possible misuses of this dissent. As Judge Goldberg correctly pointed out:
[T]he opening of any inroads weakening judicial immunity could have the gravest consequences to our system of justice. Every judicial act is done “under color of law;” absent the doctrine, every judicial error affecting a citizen's rights could thus ultimately subject the judge to section 1983 liability. To be sure, we can conjure converse chambers of horrors, but we cannot allow that to erode the necessary features of the immunity. That judicial immunity is sometimes used as an offensive dagger rather than a defensive shield must not justify derogating its inviolability. Even though there may be an occasional diabolical or venal judicial act, the independence of the judiciary must not be sacrificed one microscopic portion of a millimeter, lest the fears of section 1983 intrusions cow the judge from his duty.
McAlester v. Brown, 469 F.2d 1280, 1283 (5th Cir.1972). And like Judge Hill, I would caution those who read this opinion to be wary that this dissent "is exceedingly narrow and is tailored to this, the rarest of factual settings." Harper v. Merckle, 638 F.2d 848, 859 (5th Cir.1981) (footnote omitted).

. See Stump v. Sparkman, 435 U.S. 349, 356-357, 98 S.Ct. 1099, 1105, 55 L.Ed.2d 331 (1978) ("A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.' ” (citation and footnote omitted)).

. My disagreement with the majority opinion docs not stem from the standard of review. The majority correctly states that "[ajbsolutc judicial immunity extends to all judicial acts that are not performed in the clear absence of all jurisdiction[,]” or, conversely, "a judge has no immunity (1) for actions taken outside of his judicial capacity, or (2) for actions that are judicial in nature, but occur in complete absence of all jurisdiction." Maj. op. at 1124 (citations omitted).
The majority also properly focuses on the four factors first articulated by Judge Goldberg in McAlester to determine whether Judge Gonzales acted in his judicial capacity — (1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in his official capacity. McAlester, 469 F.2d at 1282. I also agree that these four factors should be broadly construed and that immunity may be afforded although one or more factors is not met. See Adams v. McIlhany, 764 F.2d 294, 297 (5th Cir.1985). The question presented is not whether Judge Gonzales' action in holding Malina in contempt and sentencing him to five hours in jail was "judicial in nature,” but rather whether it occurred “in complete absence of all jurisdiction.” But see infra n. 7.

.The district court correctly held, in "deciding this [Rule 12(b)(6)] motion to dismiss, the court must accept 'all allegations of the complaint ... as true, along with any reasonable inferences that may be drawn therefrom.' ” See Record Excerpts for Gonzales tab 4, at 6 (quoting Watts v. Graves, 720 F.2d 1416, 1419 (5th Cir.1983)). And so must we. See Tanglewood East Homeowners v. Charles Thomas, Inc., 849 F.2d 1568, 1572 (5th Cir.1988).

. Judge Gonzales' finding of contempt was a direct result of Malina's reaction to the charges and Judge Gonzales' admonition "that the charges would convince Malina to obey an order and pull over the next time anyone with a flashing light pulled alongside him.” See Maj. op. at 1124. “It is well settled that charging a defendant is a prosecutorial function, not a judicial function.” Id., (citing Lopez v. Vanderwater, 620 F.2d 1229, 1235 (7th Cir.), cert. denied, 449 U.S. 1028, 101 S.Ct. 601, 66 L.Ed.2d 491 (1980)). As a prosecutor, Judge Gonzales had no authority to hold Malina in contempt.

. See La.Code Civ.Proc.Ann. art. 2 (West 1960) ("Jurisdiction over the subject matter is the legal power and authority of a court to hear and determine a particular class of actions or proceedings, based upon the object of the demand, the amount in dispute, or the value of the right asserted.”).

. See La.Code Civ.Proc.Ann. art. 221 (West 1960) ("A contempt of court is any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for authority.”); see also La.Code Crim.Proc.Ann. art. 20 (West 1991) (same). See also Detoumion v. Dormenon, 1 Mart., O.S. (1810) (holding that an insult to a parish judge acting as an auctioneer, is not a contempt of him in his judicial capacity, and cannot be punished); Junius Hart Piano House v. Ingman, 119 La. 1017, 44 So. 850, 852 (1907) (citing with approval Detoumion).

. I am also somewhat skeptical of the majority's conclusion that the issuance of the contempt citation was a judicial act. An application of the four McAlester factors reveals that the issuance of the contempt citation did not arise from; (1) a case pending before Judge Gonzales; or (2) a *1129 visit to Judge Gonzales in his official capacity. Although Malina was told — by a Baton Rouge police officer on an unofficial visit — to report to Judge Gonzales's courtroom, Malina was never told why he was being “summoned/' or that he was going to be charged with a crime. In a case involving similarly egregious facts, we focused on these particular McAlester factors to support our holding that certain actions by a judge were not "judicial acts.” See Harper, 638 F.2d at 858-59 (emphasizing third and fourth McAlester factors because the determination of what constitutes a "judicial act,” must include a consideration of the "expectations of the parties”). But see Adams, 764 F.2d at 298 n. 4 (noting that Harper’s reliance on the personal motivation of the judge in arriving at its holding was inconsistent with Supreme Court and Fifth Circuit precedent).

. For the reasons stated in this dissent, I would also affirm the district court’s holding denying Judge Gonzales qualified immunity on the issue of Malina's contempt and sentence. See Anderson v. Creighton, 483 U.S. 635, 646, 107 S.Ct. 3034, 3042, 97 L.Ed.2d 523 (1987) (stating that an official is protected by qualified immunity if his actions were reasonable under the law).