827 So.2d 1271 (2002)
Lily Elena Handal Nasser HODGES
v.
Daniel Lee HODGES.
No. 02-0489.
Court of Appeal of Louisiana, Third Circuit.
October 2, 2002.
Writ Denied November 8, 2002.
*1272 Philip C. Kobetz, Attorney at Law, Lafayette, LA, for Daniel Lee Hodges.
Katherine L. Hurst, Attorney at Law, Lafayette, LA, for Lily Elena Handal Nasser Hodges.
Court composed of BILLIE COLOMBARO WOODARD, OSWALD A. DECUIR, and MICHAEL G. SULLIVAN, Judges.
DECUIR, Judge.
In this custody dispute, the mother appeals a judgment of the trial court finding her in contempt, awarding sole custody of one child to the father, ordering that joint custody be maintained with regard to the other two children with the father as domiciliary parent, and imposing various restrictions on visitation. The husband appeals that portion of the judgment which denied him authority to relocate the residence of the minor children to Virginia.

FACTS
Dan and Lily Hodges were married in December of 1977. Three children were born of the marriage. They are Camille' born in 1985, Camilla born in 1989, and Daniel born in 1990.
Lily, a Palestinian raised in Central America and Dan, a Virginian, met in medical school in Mexico and married in Honduras. Dan became a doctor of physical medicine and rehabilitation. Lily became a psychiatrist. They lived and practiced medicine in Lafayette, Louisiana from 1989 until May of 1992. At that time they moved to Dan's home state of Virginia. The family resided in Virginia from May of 1992 to August of 1998. Lily carried on a limited and dwindling psychiatric practice, while Dan practiced in both Lafayette and Virginia. He would fly to Lafayette and work two to three days a week.
During this time, the couple's marriage became troubled and Lily's chronic depression worsened. On August 1, 1998, Lily attempted suicide in the family home with the family present. Dan, with the help of Lily's sister, was able to wrestle the gun away and avert a disaster. Shortly thereafter, the family moved back to Lafayette in order for Lily to reestablish her psychiatric practice.
On October 26, 1998, Lily filed for divorce. The parties were divorced on June 28, 1999. Joint custody was established with Dan as the domiciliary parent for all three children. Visitation with the two younger children was alternating seven day periods and visitation between Camille' and Lily was to be "reasonable." The visitation was different for Camille' due to difficulties with her relationship with her mother. Among these difficulties were Lily calling the child a "bitch" and physically throwing her out of the house on numerous occasions. Camille' was thirteen at the time. At the end of the 1998-99 school year Camille' moved back to Virginia where she has continued to live with Dan's parents.
The parents continued alternate visitation with Camilla and Daniel until October of 2000. At that time, Lily quit bringing Camilla to see her father, alleging that she did not want to visit. Dan filed a rule to enforce the joint custody visitation plan, requesting that Lily post a bond to ensure compliance, and requesting attorney fees, costs, and a contempt citation. In the interim, the parties agreed to family counseling with Dr. David Legendre, a Ph.D in family relations, and marriage and family therapy. After eight weeks, Dr. Legendre advised that Lily make Camilla visit her father and referred Lily to Dr. Luke Elliot, a clinical psychologist, to rule out suicidal ideation and eating disorders.
Ultimately, after counseling with the family, Dr. Elliot ruled out suicidal ideation and eating disorders. He also determined that Camilla's claims that her father *1273 was verbally abusive were untrue. Dr. Elliot advised that Lily make Camilla visit her father. Only two such visits occurred and not for the seven day periods ordered by the court. Consequently, Dan continued to move forward with the custody litigation. At that time, Lily advised Dr. Elliot that, in her professional opinion as a psychiatrist, Dan was a sociopath and that the children were unsafe. Dr. Elliot withdrew his recommendation on visitation until the parents could be evaluated by a clinical psychologist. Dr. Elliot then proposed a nine point interim visitation plan which the parties agreed to. Lily did not comply with the agreement.
Dr. Elliot referred both parties to Dr. Christine Angelloz, a clinical psychologist. She determined that Dan was not a sociopath and did not suffer from any psychological disorder. However, Dr. Angelloz diagnosed Lily with chronic adjustment disorder with anxiety and depression, post traumatic stress disorder, and acculturation disorder.
Despite the results of the evaluations, Lily continued to keep Camilla from Dan, insisting he was a sociopath. In addition, her behavior toward Daniel became erratic. On her last visit prior to trial, she poured ice water on Daniel's head and confined him to his room for two days without electricity. On August 28, 2001, Dan filed a supplemental and amending rule requesting sole custody, subject to limited supervised visitation in favor of Lily. Dan also sought authority to relocate to Virginia.
Pursuant to a temporary order, Dan and Daniel relocated to Virginia and Camilla remained with Lily. Subsequently, a trial was held. The trial court designated Dan as domiciliary parent of Camilla and Daniel, and sole custodian of Camille'. Lily was found in contempt of court and ordered to post a bond to ensure compliance with the court order. Lily's visitation was fixed at every other weekend, and each parent was prohibited from telephone contact with the children while in the custody of the other parent. Dan was denied authority to relocate. Dan appealed the denial of authority to relocate. Lily answered the appeal, alleging error in numerous rulings of the trial court.

DENIAL OF RELOCATION
Dan alleges that the trial court erred in denying his motion to relocate the children to Virginia. We agree.
This state's "relocation statute" requires a parent with primary custody to give notice to the non-domiciliary parent of the intent to relocate the primary residence of the minor child within their care. The non-domiciliary parent who is given adequate notice then has the opportunity to initiate a hearing wherein he or she can set before the court any objection to the relocation.
The relocating parent has the burden of proving: 1) the proposed relocation is in good faith; and 2) it is in the best interest of the child. La.R.S. 9:355.13. La.R.S. 9:355.12 sets forth the factors a court shall consider when determining a relocation issue. These factors are:
(1) The nature, quality, extent of involvement, and duration of the child's relationship with the parent proposing to relocate and with the non-relocating parent, siblings, and other significant persons in the child's life.
(2) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child.
(3) The feasibility of preserving the relationship between the non-relocating parent and the child through suitable visitation arrangements, considering the *1274 logistics and financial circumstances of the parties.
(4) The child's preference, taking into consideration the age and maturity of the child.
(5) Whether there is an established pattern of conduct of the parent seeking the relocation, either to promote or thwart the relationship of the child and the non-relocating party.
(6) Whether the relocation of the child will enhance the general quality of life for both the custodial parent seeking the relocation and the child, including but not limited to financial or emotional benefit or educational opportunity.
(7) The reasons of each parent for seeking or opposing the relocation.
(8) Any other factors affecting the best interest of the child.
It is evident from our review of the record that Dan carried his burden of proof in both establishing that this proposed relocation is in good faith and that it is in the best interest of the children.
The trial court failed to explicitly find that Dan was in good faith, but the reasons for judgment make clear that sympathy for Lily motivated the court's refusal to approve the relocation, not bad faith on the part of Dan. There is a legitimate reason for the move. Dan's parents live in Virginia. Camille' has been residing with them in Virginia for several years. The family lived in Virginia for many years before Lily's suicide attempt. The move back to Louisiana was an attempt to salvage Lily's crumbling emotional and professional condition.
Having determined the good faith of the relocation, we must consider whether Dan carried the burden of establishing the move was in the best interest of the children. The trial court neither cited the relocation statute nor analyzed the factors as is required by La.R.S. 9:355.12. When the factors are individually considered in light of the evidence adduced, it becomes clear that Dan has established that this move is in Camilla's and Daniel's best interest.
With regard to factor one, the evidence established that both Dan and Lily have played active roles in their children's lives. They have shared joint custody for several years with frequent visitation. This continued until Lily cut off Camilla's visitation with Dan.
With regard to the second factor, Camilla is approximately twelve years old and Daniel is eleven and Dan has been their primary domiciliary parent since the divorce. Camilla has complained of problems with her father, but Dr. Elliot found them to be unfounded. On the other hand, both Camille' and Daniel have experienced abusive behavior at the hands of Lily.
With regard to factor three involving the feasibility of preserving the relationship with the non-relocating parent, there appear to be no major obstacles other than distance. Both parties are doctors, and Dan has already agreed to fly the children in for one of the court ordered visits each month. The financial burden therefore, is minimal. The fact that Dan flew back and forth for years suggests that the logistics are not a major problem. Furthermore, Dan has demonstrated his willingness to cooperate in visitation arrangements with Lily so that contact may be maintained.
The preferences of Camilla and Daniel appear to be at odds and given their respective ages are certainly not controlling. However, they are a factor to be considered.
With regard to factor five, it is clear that Dan has attempted to cooperate with visitation. It is equally clear that Lily has been uncooperative and worked at thwarting visitation and has punished the children *1275 for her perception that they side with their father. Lily has assigned as error the trial court's determination that Dan is the parent most likely to encourage and continue the children's relationship with the other parent. As noted above, the record supports the trial court's determination.
Factor six regarding enhancement of life seems to favor the move. The older sister is already there. Dan's parents are there. The children lived there during their formative years.
The reasons of each parent for seeking or opposing the relocation are also to be considered. The reasons for Dan's seeking the relocation are clear and set forth above. The reason Lily opposes the relocation is equally as obvious. She loves her children, she does not want to be separated from them, and she feels she can no longer successfully practice in Virginia.
Finally, any other factors that may affect the best interest of the children must be considered. This obviously encompasses each unique circumstance which might pertain to individual cases. The trial court is obviously sympathetic to Lily's plight but, in sympathizing, made several disturbing findings of fact and then apparently gave them little weight. The trial court noted that Lily was "unraveling," was diagnosed with three psychological disorders, was apparently modeling abusive behavior she experienced on her older daughter, was willfully disrupting visitation, and attempted to have Dan labeled a sociopath. In contrast, the trial court found that Dan was angry and blamed his wife, failing to have proper insight into her psychological difficulties.
We find the court erred, however, by failing to apply an analysis of the above factors to its findings of fact and instead rendering a decision which appears to be based primarily on sympathy for Lily's emotional state. No one factor listed in the "relocation statute" is controlling. The court must consider all factors and the totality of the evidence as it pertains to those factors. We find the trial court erred in this respect.
Accordingly, we find that Dan carried his burden of proof in all respects under La.R.S. 9:355.13. We find that the proposed relocation of the minor children is in their best interest.

VISITATION SCHEDULE
Lily argues that the trial court erred in the following respects regarding the establishment of a visitation schedule: 1) modifying the alternating seven-day schedule previously in force; 2) granting Lily insufficient time with her children; 3) failing to provide for holiday or summer visitation; 4) leaving summer and holiday visitation to the parties and their mental health providers; and 5) restricting telephone contact between parent and child when with the other parent.
At the outset, we note that the trial court enjoys much discretion when establishing a schedule for physical custody of children of a marriage where parents have joint custody. Voorhies v. Voorhies, 96-342 (La.App. 3 Cir. 10/9/96); 688 So.2d 1158. After reviewing the record, we find no abuse of that discretion with regard to alleged errors one and two. Errors three and four are not errors in that the judgment specifically states that the trial court reserved judgment pending the recommendations of the parties with the help of their mental health professionals. Accordingly, these issues are still open. Likewise, we find there is adequate evidentiary support in the record to warrant the trial court's restrictions on telephone contact.

POSTING OF BOND
Lily argues that the trial court erred in requiring her to post a bond for *1276 visitation. La. R.S. 9:342 provides that a court may, for good cause shown, require the posting of a bond or other security to ensure compliance with a visitation order. Lily contends there was not good cause shown. The record reflects the contrary. Lily repeatedly refused to comply with the visitation schedule and orders of the court. Under these circumstances, the trial court did not err in requiring Lily to post a bond.

CONTEMPT OF COURT
Lily next argues that the trial court erred in finding her in contempt of court and ordering her to pay attorney fees in the amount of $2,560.00.
Prior to the 1999 amendments to La. Code Civ.P. art.1915, a contempt judgment was considered an interlocutory decree, reviewable only on application for supervisory writs. See Cooley v. Cooley, 94-251 (La.App. 3 Cir. 10/5/94); 643 So.2d 408. However, La.Code Civ.P. art. 1915(A)(6) now allows the appeal of a judgment that "[i]mposes sanctions or disciplinary action pursuant to Article 191, 863, or 864." La. Code Civ.P. art. 191 refers to the inherent power of courts, while La.Code Civ.P. arts. 863 and 864 refer to contempt arising from the signing of court pleadings. Thus, all contempt judgments are now considered final judgments, subject to immediate appeal.
In Lambert v. Adams, 347 So.2d 883, 884-85 (La.App. 3 Cir.1977), this court said:
Our jurisprudence has established the following general rules regarding contempt proceedings: First, the object and purpose of a contempt proceeding is to vindicate the authority and dignity of the court. It is not designed for the benefit of the litigants, even though infliction of punishment for contempt may inure to the benefit of the mover in the contempt rule. State ex rel. Duffy and Behan v. Civil District Court for Parish of Orleans, 112 La. 182, 36 So. 315 (1904); Robertson v. Robertson, 258 So.2d 125 (La.App. 2d Cir.1972). Second, unless a litigant willfully disobeys a direct order of the court issued prior to the contempt rule, he should not be held in contempt, even if his acts tend to frustrate the opposing litigant. State ex rel. Duffy and Behan, supra. Third, proceedings for contempt must be strictly construed, and the policy of our law does not favor extending their scope. Roy v. Berard, 227 La. 86, 78 So.2d 519 (1955); Junius Hart Piano House v. Ingman, 119 La. 1017, 44 So. 850 (1907). Fourth, as a general rule, contempt proceedings should not be resorted to where other specific remedies are provided by law. State ex rel. Duffy and Behan, supra; In re State ex rel. Hero, 36 La.Ann. 352 (1884); Junius Hart Piano House v. Ingman, supra.
The trial court is vested with great discretion in contempt determinations and its decision will only be reversed when the appellate court can discern an abuse of that discretion. Stephens v. Stephens, 30,498 (La.App. 2 Cir. 5/13/98); 714 So.2d 115. In the case at bar, the record clearly reflects that Lily intentionally failed to comply with orders of the court. We find no abuse of discretion in the trial court's finding Lily in contempt.
It is well settled that a party may only recover attorney's fees if provided for by contract or statute. General Motors Acceptance Corp. v. Meyers, 385 So.2d 245 (La.1980). There are several statutes which specifically provide for the award of attorney's fees in domestic cases. Pertinent to the case at bar is La.R.S. 9:375 which permits the assessment of such fees in an action to make past due support executory and in actions to enforce child visitation. The rule for contempt and *1277 posting of bond in this case was filed to enforce a visitation order. Accordingly, the trial court did not err in awarding attorney fees in this case.

MOTION TO STRIKE
Dan filed a motion to strike certain portions of the argument in Lily's brief dealing with matters not in evidence. The motion is hereby granted.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is reversed insofar as it denies Dan Hodges' request to relocate his children to Virginia. In all other respects, the judgment of the trial court is affirmed. Dan Hodges' motion to strike is granted. All costs of these proceedings are taxed to Lily Hodges.
REVERSED IN PART; AFFIRMED IN PART; MOTION GRANTED.
WOODARD, J., concurs in the result.