NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

07-704


LUCINDA E. CONNER-ELLIS

VERSUS

HARVEY LEO ELLIS, JR.


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 01-C-2280-D
HONORABLE DONALD W. HEBERT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

OSWALD A. DECUIR
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Oswald A. Decuir, Elizabeth A. Pickett, and J. David Painter, Judges.

AFFIRMED.

Anthony C. Dupre'
Attorney at Law
P. O. Drawer F
Ville Platte, LA 70586
(337) 363-3804
Counsel for Plaintiff/Appellant:
    Lucinda E. Conner-Ellis

Alex D. Chapman  Jr.
Attorney at Law
801 W. Lincoln Road
Ville Platte, LA 70586
(337) 363-2229
Counsel for Defendant/Appellee:
    Harvey Leo Ellis, Jr.

**DECUIR, Judge.**

Lucinda E. Connor Ellis appeals the decision of the trial court finding her in contempt of court for failing to comply with court-ordered visitation. She also appeals the denial of her motion to alter the visitation schedule. For the following reasons, we affirm.

Lucinda E. Conner Ellis and Harvey Leo Ellis, Jr. are the divorced parents of the minor child, Michelle Ellis. Joint custody was ordered in 2002, and Lucinda was designated as the domiciliary parent. Harvey was granted biweekly visitation which included weekend visits and phone calls. Beginning in the summer of 2006, Lucinda failed to comply with the court ordered visitation schedule, and Harvey filed a rule for contempt of court. Lucinda filed a motion to modify the visitation schedule. The motions were consolidated for trial and a hearing was held on February 2, 2007. Michelle was nine years old at the time of the hearing.

The record includes testimony from Lucinda, Harvey, Michelle, and Michelle's counselor, as well as two people who know Harvey from their church and a representative of Big Brothers/Big Sisters of Acadiana where Harvey is a volunteer big brother. The testimony of Lucinda and the counselor indicates that Michelle does not want to visit her father, is afraid of him, and is not comfortable visiting for an entire weekend. Lucinda testified that she stopped making Michelle go to her father's house when Michelle's resistance grew so strong that she would have had to drag the child into the car. She also testified that Michelle cried so hard about having to go to her father's house that she once made herself physically sick and was brought to the hospital to verify the symptoms.

Michelle's testimony in court, however, given outside the presence of her parents, did not evidence the fear and displeasure described by Lucinda. While Michelle did mimic her mother's list of complaints, the testimony as a whole

indicated no difficulties during the visits and no harm to Michelle that would warrant curtailing what the trial court described as Harvey's "sacrosanct" parental rights to visit with his child. While Michelle mentioned some things that she does not enjoy about visits with her father, her testimony indicated that her visits for the most part are quite pleasant. In evaluating Michelle's testimony in oral reasons for judgment, the trial court commented, "I was absolutely struck by how close the testimony given by the child mirrored, echoed, testimony given by the mother" and the counselor regarding conversations about Santa Claus and abortion, or going to Kids' Quest and other places. The trial court explained that Lucinda's only excuse for cutting off visitation was "that the child simply didn't want to go. . . . There's no foundation or underlying basis for that. She just elects to let the child do what she wants." Other witnesses testified that Michelle appears happy and content while visiting her father, in contrast to the counselor's description that Michelle feels "trapped" at her father's house.

After listening to the evidence presented, the trial court determined that Lucinda's actions in failing to comply with visitation and the court-ordered phone conversations were wilful and deliberate. She was found to be in contempt and was given a suspended sentence of twenty-four hours in jail and a one hundred dollar fine. She was ordered to pay court costs and attorney fees of five hundred dollars. The court reiterated the original visitation schedule, allowing for visits every other weekend from 5:00 p.m. Friday to 5:00 p.m. Sunday, and added two weeks in the summer.

A parent's visitation rights were succinctly described in *Harper v. Harper,* 00-1425 (La.App. 5 Cir. 1/30/01), 777 So.2d 1275, 1278, *writ denied*, 01-768 (La. 5/11/01), 792 So.2d 736:

2

A parent who is not the primary custodian of the minor child or children of the former marriage is entitled to reasonable visitation rights unless the court finds, after a hearing, that such visitation would not be in the best interest of the child. *Becnel v. Becnel,* 98-593 (La.App. 5th Cir. 3/25/99), 732 So.2d 589, *writ denied,* 99-1165 (La. 6/4/99), 744 So.2d 630; La. C.C. art. 136(A). The law recognizes the non-custodial parent's entitlement to reasonable visitation unless it is shown that it would seriously endanger the child's mental, moral or emotional health. *Becnel v. Becnel,* supra.

In the recent case of *Leard v. Schenker,* 06-1116, pp. 3-4 (La. 6/16/06), 931 So.2d 355, 357, the supreme court reiterated the long standing principle that custody and visitation matters are subject to an abuse of discretion standard of review: "The correct standard of review for the trial court judgment was the abuse of discretion standard. *AEB v. JBE,* 99-2668, p. 7 (La. 11/30/99), 752 So.2d 756, 761 (the determination of the trial judge in child custody matters is entitled to great weight and his discretion will not be disturbed on review in the absence of a clear showing of abuse)." *See also, Babin v. Babin,* 02-0396 (La.App. 1 Cir. 7/30/03), 854 So.2d 403, 408, *writ denied*, 03-2460 (La. 9/24/03), 854 So.2d 338, where the court held, "The trial court is vested with vast discretion in matters of child custody and visitation. Accordingly, its determination regarding same is entitled to great weight and will not be disturbed on appeal unless an abuse of discretion is clearly shown. *Stephens v. Stephens,* 2002-0402, p. 4 (La.App. 1 Cir. 6/21/02), 822 So.2d 770, 774."

In *Hodges v. Hodges,* 02-0489 (La.App. 3 Cir. 10/2/02), 827 So.2d 1271, *writ denied*, 02-2485 (La. 11/8/02), 828 So.2d 1122, this court was called upon to review the trial court's exercise of its discretion in establishing a schedule for physical custody of children whose divorced parents had been granted joint custody. Similar to the instant case, the mother in *Hodges* was alleged to be in contempt for failing to comply with the visitation schedule ordered by the court. We explained the elements necessary for a finding of contempt and the applicable standard of review:

3

In *Lambert v. Adams,* 347 So.2d 883, 884-85 (La.App. 3 Cir. 1977), this court said:

> Our jurisprudence has established the following general rules regarding contempt proceedings: First, the object and purpose of a contempt proceeding is to vindicate the authority and dignity of the court. It is not designed for the benefit of the litigants, even though infliction of punishment for contempt may inure to the benefit of the mover in the contempt rule. *State ex rel. Duffy and Behan v. Civil District Court for Parish of Orleans,* 112 La. 182, 36 So. 315 (1904); *Robertson v. Robertson,* 258 So.2d 125 (La.App. 2d Cir. 1972). Second, unless a litigant willfully disobeys a direct order of the court issued prior to the contempt rule, he should not be held in contempt, even if his acts tend to frustrate the opposing litigant. *State ex rel. Duffy and Behan,* supra. Third, proceedings for contempt must be strictly construed, and the policy of our law does not favor extending their scope. *Roy v. Berard,* 227 La. 86, 78 So.2d 519 (1955); *Junius Hart Piano House v. Ingman,* 119 La. 1017, 44 So. 850 (1907). Fourth, as a general rule, contempt proceedings should not be resorted to where other specific remedies are provided by law. *State ex rel. Duffy and Behan,* supra; *In re State ex rel. Hero,* 36 La.Ann. 352 (1884); *Junius Hart Piano House v. Ingman,* supra.

> The trial court is vested with great discretion in contempt determinations and its decision will only be reversed when the appellate court can discern an abuse of that discretion. *Stephens v. Stephens,* 30,498 (La.App. 2 Cir. 5/13/98); 714 So.2d 115.

*Hodges*, 827 So.2d at 1276.

After reviewing the record in light of the legal precepts applicable to this case, we find no abuse of discretion in the judgment rendered by the trial court. The record supports the factual determination that Lucinda's actions in refusing to comply with the court ordered visitation schedule were wilful and deliberate. The evidence also substantiates the conclusion that Michelle is in no way harmed by the court ordered visitation with her father. Continuation of the visitation plan is in Michelle's best interest, and the trial court was correct in its ruling.

Accordingly, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Lucinda E. Conner-Ellis.

**AFFIRMED.**

5

This opinion is NOT DESIGNATED FOR PUBLICATION. Rule 2-16.3, Uniform Rules, Courts of Appeal.